**Michael C. THOMPSON, Petitioner,**

v.

**The DEPARTMENT OF THE TREASURY, BUREAU OF ALCOHOL, TOBACCO AND FIREARMS, Respondent.**

No. C–81–0095A.

United States District Court, D. Utah, C.D.

Dec. 29, 1982.

See also D.C., 533 F.Supp. 90.

Robert B. Sykes, Salt Lake City, Utah, for petitioner.

D. Brent Ward, U.S. Atty., Barbara W. Richman, Charles William Ryan, Asst. U.S. Attys., Salt Lake City, Utah, for respondent.

## ORDER DENYING MOTION FOR SUMMARY JUDGMENT

ALDON J. ANDERSON, Chief Judge.

In 1968, at the age of 21, petitioner Michael Carty Thompson pled guilty to charges of fraudulent use of credit cards and obtaining merchandise by false pretenses. Under 18 U.S.C. § 922 and 18 U.S.C.App. § 1202, Thompson's conviction made it illegal for him to receive, transport, or possess firearms.[1] Since 1968, he has not been convicted nor arrested on any criminal charges.

---

1. Title 18 U.S.C. § 922(g)–(h) provides as follows:

(g) It shall be unlawful for any person—

(1) who is under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

(2) who is a fugitive from justice;

(3) who is an unlawful user of or addicted to marihuana or any depressant or stimulant drug (as defined in section 201(v) of the Federal Food, Drug, and Cosmetic Act) or narcotic drug (as defined in section 4731(a) of the Internal Revenue Code of 1954); or

(4) who has been adjudicated as a mental defective or who has been committed to a mental institution;

Since 1974 Thompson has been the president and majority shareholder of a security guard contracting company which employs many security guards, some of whom carry firearms. As part of his responsibility in his company, Thompson was certified in 1980 by the State of Utah as a firearms trainer for private security guards. He also is often called upon to render "executive protection services" for his clients, which requires his personal use of firearms.

On January 5, 1979, Thompson's attorney secured a judicial pardon and expungement of the 1968 misdemeanor criminal charges, but by mistake failed to secure pardon and expungement of the felony charges. This was corrected on April 9, 1982.

On October 2, 1979, Thompson filed an application for relief from his federal firearms disabilities pursuant to 28 U.S.C. § 925(c).[2] One year later, in October, 1980, respondent Bureau of Alcohol, Tobacco, and Firearms (BATF) denied his application on the grounds that they were "not presently satisfied that the ... statutory requirements for granting relief have been met."[3] Thompson sought judicial review of that

---

to ship or transport any firearm or ammunition in interstate or foreign commerce.

(h) It shall be unlawful for any person—

(1) who is under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

(2) who is a fugitive from justice;

(3) who is an unlawful user of or addicted to marihuana or any depressant or stimulant drug (as defined in section 201(v) of the Federal Food, Drug, and Cosmetic Act) or narcotic drug (as defined in section 4731(a) of the Internal Revenue Code of 1954); or

(4) who has been adjudicated as a mental defective or who has been committed to any mental institution;

to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

Title 18 U.S.C.App. § 1202(a) provides as follows:

§ 1202. Receipt, Possession, or Transportation of firearms—Persons liable; penalties for violations

(a) Any person who—

(1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony, or

(2) has been discharged from the Armed Forces under dishonorable conditions, or

(3) has been adjudged by a court of the United States or of a State or any political subdivision thereof of being mentally incompetent, or

(4) having been a citizen of the United States has renounced his citizenship, or

(5) being an alien is illegally or unlawfully in the United States, and who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both.

**2.** Title 18 U.S.C. § 925(c) provides as follows:

(c) A person who has been convicted of a crime punishable by imprisonment for a term exceeding one year (other than a crime involving the use of a firearm or other weapon or a violation of this chapter or of the National Firearms Act) may make application to the Secretary for relief from the disabilities imposed by Federal laws with respect to the acquisition, receipt, transfer, shipment, or possession of firearms and incurred by reason of such conviction, and the Secretary may grant such relief if it is established to his satisfaction that the circumstances regarding the conviction, and the applicant's record and reputation, are such that the applicant will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest. A licensed importer, licensed manufacturer, licensed dealer, or licensed collector conducting operations under this chapter, who makes application for relief from the disabilities incurred under this chapter by reason of such conviction, shall not be barred by such conviction from further operatioins under his license pending final action on an application for relief filed pursuant to this section. Whenever the Secretary grants relief to any person pursuant to this section he shall promptly publish in the Federal Register notice of such action, together with the reasons therefor.

**3.** The "statutory requirements" apparently referred to are the requirements that it must be established to the satisfaction of the Secretary of the Treasury "that the circumstances regarding the conviction, and the applicant's record and reputation, are such that the applicant will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest." 18 U.S.C. § 925(c). *See* note 2, supra, for the entire text of this subsection.

decision on the grounds that it was an arbitrary and capricious abuse of discretion.[4]

In April, 1982, Thompson filed a motion to amend the complaint and for summary judgment. The amended complaint adds three new claims to the prior claim of abuse of discretion: (1) a claim for declaratory judgment that, as a result of his judicial pardon and expungement, Thompson is free from any firearms disabilities under federal law; (2) a claim that there has been an impermissible sub-delegation of authority from the Secretary of the Treasury to the chief of investigations with respect to the decision denying Thompson the relief that he requested; (3) a claim for declaratory judgment that Title 18 U.S.C. § 922 and Title 18 U.S.C.App. § 1202 are unconstitutional as applied to Thompson because they violate his rights of due process of law. Upon stipulation by the parties, leave to amend the complaint was granted on May 24, 1982. The motion that is the subject of this order seeks summary judgment on the amended complaint's first additional claim that the judicial pardon and expungement relieve Thompson from any federal firearms disability.

In the course of its consideration of this motion the court advised counsel that it had serious questions about (1) its subject matter jurisdiction to hear the expungement claim and (2) the government's possible sovereign immunity from that claim. Counsel have responded with memoranda addressing these issues and have further presented their arguments in a hearing held October 18, 1982. In addition to the above two procedural issues, respondent has raised the additional one of whether an actual controversy exists between the parties regarding the expungement claim. Having read the memoranda and the authorities cited and having considered fully these procedural issues as well as the merits of the expungement claim, the court is ready to rule on the Motion for Summary Judgment. In doing so, the court must decide four issues: (I) whether the court has subject matter jurisdiction to hear the expungement claim; (II) whether the government is not protected from that claim by sovereign immunity; (III) whether an actual case and controversy exists, as to this claim, between the petitioner and respondent; and (IV) if the procedural issues are answered affirmatively, whether the judicial pardon and expungement of petitioner's 1968 conviction relieve him of the federal firearms disability under 18 U.S.C. § 922 and 18 U.S.C.App. § 1202.

## I. SUBJECT MATTER JURISDICTION

■ Counsel for respondent has cited many reasons why subject matter jurisdiction over the expungement claim does not exist in this court, and counsel for petitioner has responded with what he believes to be several grounds for appropriate subject matter jurisdiction, all of which has been very helpful. However, the court is not required to reach many of the grounds and arguments of counsel, as it believes that subject matter jurisdiction over the expungement claim exists at the discretion of the court under 5 U.S.C. § 702, 28 U.S.C. § 1331, and *NLRB v. Jones and Laughlin Steel Corp.*, 331 U.S. 416, 67 S.Ct. 1274, 91 L.Ed. 1575 (1947).

Clearly the court has subject matter jurisdiction over the original petition; i.e., it has authority to review the agency action denying relief from federal firearms disability. When Congress amended Title 28 U.S.C. § 1331(a) in 1976 to eliminate the amount in controversy requirement for maintenance of "any [1331] action brought against the United States, any agency thereof, or any officer or employee thereof in his official capacity," Pub.L. 94–574, § 2, 90 Stat. 2721 (1976),[5] "[t]he obvious effect of this modification, subject only to preclu-

---

4. Shortly after the petition for review was filed, respondents filed a motion for summary judgment which was denied. *Thompson v. Department of the Treasury,* 533 F.Supp. 90 (D.Utah 1981).

5. In 1980 § 1331 was further amended to eliminate the amount in controversy requirement for all federal question cases. Pub.L. 96–486, § 2(a), 94 Stat. 2369 (1980).

sion-of-review statutes created or retained by Congress, [was] to confer jurisdiction on federal courts to review agency action." *Califano v. Sanders,* 430 U.S. 99, 105, 97 S.Ct. 980, 984, 51 L.Ed.2d 192 (1977). However, the original concern of this court, when it requested counsel to address the jurisdiction question, was whether its subject matter jurisdiction extended to the expungement issue, in light of the fact that the agency below did not consider that issue in making its determination.[6] Indeed, the expungement of petitioner's felony convictions did not take place until well after the Bureau denied his application for relief.

The court's concern has been answered by *NLRB v. Jones and Laughlin Steel Corp.,* 331 U.S. 416, 67 S.Ct. 1274, 91 L.Ed. 1575 (1947). In that case the Supreme Court held that when circumstances "arise after the Board's order has been issued which may affect the propriety of enforcement of the order, the reviewing court has discretion to decide the matter itself or to remand it to the Board for further consideration." 331 U.S. at 428, 67 S.Ct. at 1281. That is a sound rule for review of all administrative decisions.

In this case, petitioner's application for relief from disability was denied in October, 1980. The judicial pardon and expungement of his conviction occurred in April, 1982. Thus, the pardon and expungement comprise a new circumstance arising after the administrative decision, and whether the court will consider the effect of that circumstance on the BATF's decision is left to the court's discretion. In exercising that discretion, the court concludes that it ought to consider the matter now rather than remand it for another lengthy cycle in the administrative process. There are several factors contributing to this conclusion. First, it has already been three years since Thompson first applied for relief from the federal firearms disability. If the history of this case is any guide, it will be at least another year before he would receive a response from the BATF regarding a renewed application. In the meantime, he must make the choice between either abandoning his business or subjecting himself and perhaps his employees to potential prosecution for violation of the federal firearms control statutes.[7] Second, the BATF has informed the petitioner that it does not consider the judicial pardon and expungement to affect his disability; hence further pursuit of a remedy through administrative channels would be futile. Third, though petitioner may re-apply for relief two years after the original denial (October, 1980), the Bureau has refused to send him the necessary forms for re-application, citing the pending litigation as a reason. Finally, there is no factual dispute involved in the expungement claim; the sole issue is a question of law, of statutory interpretation, which this court is competent to decide. Under these circumstances, justice is best served by presently considering the effect of the petitioner's judicial pardon and expungement on his federal firearms disability, without waiting for a formal determination by the Bureau.

**6.** Although the expungement issue was not considered in connection with the review of Thompson's application for relief, since then the respondents have steadfastly maintained that the state expungement has no effect on petitioner's firearms disability.

**7.** Thompson's employees may be subject to liability pursuant to 18 U.S.C.App. § 1202(b), which provides:

(b) Any individual who to his knowledge and while being employed by any person who—

(1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony, or

(2) has been discharged from the Armed Forces under dishonorable conditions, or

(3) has been adjudged by a court of the United States or of a State or any political subdivision thereof of being mentally incompetent, or

(4) having been a citizen of the United States has renounced his citizenship, or

(5) being an alien is illegally or unlawfully in the United States, and who, in the course of such employment, receives, possesses, or transports in commerce or affecting commerce, after the date of the enactment of this Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both.

## II. SOVEREIGN IMMUNITY

■ In a letter to counsel dated June 25, 1982, the court raised another question of jurisdiction, expressing the view that "the suit may be barred by the doctrine of sovereign immunity." Upon reviewing the memoranda in response to that letter, the statutes and the cases cited, the court is satisfied that the United States has waived its immunity in cases such as this.

The same statute that amended 28 U.S.C. § 1331 to grant federal courts jurisdiction to review agency decisions also amended the Administrative Procedure Act to waive sovereign immunity for such a review:

> An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensible party.

5 U.S.C. § 702. Though at least one Court of Appeals has determined, under unique circumstances, that this amendment did not waive the defense of sovereign immunity under Section 1331, *Watson v. Blumenthal,* 586 F.2d 925 (2d Cir.1978), courts from other circuits, including the Tenth Circuit, have recognized that the plain intent of the clear statutory language supported by the legislative history is to waive sovereign immunity in actions brought to review the decisions of administrative agencies. *Warin v. Director, Department of the Treasury,* 672 F.2d 590 (6th Cir.1982); *Carpet, Linoleum and Resilient Tile Layers, Local # 419 v. Brown,* 656 F.2d 564 (10th Cir. 1981); *Beller v. Middendorf,* 632 F.2d 788 (9th Cir.1980), *cert. denied,* 452 U.S. 905, 101 S.Ct. 3030, 69 L.Ed.2d 405 (1981); *Jaffee v. United States,* 592 F.2d 712 (3rd Cir.1979); *Sheehan v. Army & Air Force Exch. Services,* 619 F.2d 1132 (5th Cir.1979), *rev. on other grounds,* —— U.S. ——, 102 S.Ct. 2118, 72 L.Ed.2d 520 (1982). On the basis of this authority and the plain wording of the statute, the court concludes that this action is not barred by the defense of sovereign immunity.

## III. CASE OR CONTROVERSY

■ Respondent's Opposition to Plaintiff's Motion for Summary Judgment asserts that petitioner's claim regarding expungement fails to state an actual controversy, since the amended complaint alleges only that the Bureau "could recommend prosecution," and that "[t]his could apply to any number of individuals in Plaintiff's company." Respondent insists that petitioner has no standing to assert the rights of his employees, and as to both himself and his employees he has not alleged sufficient threatened or actual injury to bring this case within the actual controversy requirement.

This assertion is answered by the holding of the Supreme Court in *Doe v. Bolton,* 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973). There physicians who would have been subject to prosecution under the state anti-abortion statute were they to perform an abortion were allowed to challenge the statute in spite of the fact that they had not yet performed an abortion and were not yet even subject to prosecution. The Court noted that the doctors "should not be required to await and undergo a criminal prosecution as the sole means of seeking relief." 410 U.S. at 188, 93 S.Ct. at 745. Petitioner's case is stronger for adjudication than *Bolton* was. Thompson is *presently* subject to prosecution for violation of the federal firearms statutes. Furthermore, here there are none of the federalism issues present in *Bolton,* where the challenged statute was a state statute. To rule that Thompson's expungement claim is not a ripe controversy would force him to face the risks of prosecution and conviction under the federal statutes in order to obtain an adjudication of his claim. It would be manifestly unjust to do so.

Having determined that the court has jurisdiction over the expungement claim, that the claim is not barred by sovereign immunity, and that it presents a justiciable controversy, the court must now address the merits of petitioner's claim.

## IV. RELIEF FROM FEDERAL FIREARMS DISABILITY

Absent the judicial pardon and expungement, Thompson's 1968 felony conviction clearly places him under the federal firearms disability imposed by 18 U.S.C. § 922 and 18 U.S.C.App. § 1202. Both § 922 and § 1202 proscribe the receipt of firearms by convicted felons.[8] Section 1202 reaches possession as well.

Section 922 was enacted as part of Title IV of the Omnibus Crime Control and Safe Streets Act of 1968, Pub.L. 90–351, 82 Stat. 197 (hereinafter referred to as "Omnibus Crime Act"), as amended by the Gun Control Act of 1968, Pub.L. 90–618, 82 Stat. 1213. That title also contains a provision, at 18 U.S.C. § 925(c), for administrative relief from the firearms disability.[9] No other express provision for relief or exemption from the disability is contained in the statute.

Section 1202 was enacted as part of Title VII of the Omnibus Crime Act, which was added as a floor amendment and enacted without committee consideration. Title VII also contains a provision, at 18 U.S.C.App. § 1203, exempting from the § 1202 disability any person who, *inter alia,* "has been pardoned by the chief executive of a State and has expressly been authorized by ... such chief executive ... to receive, possess, or transport in commerce a firearm."[10] In addition to this exemption, it is apparent that the § 925 administrative relief may also be applied to remove the § 1202 disability. *Lewis v. United States,* 445 U.S. 55, 64, 100 S.Ct. 915, 920, 63 L.Ed.2d 198 (1980); *United States v. Kelly,* 519 F.2d 794 (8th Cir.1975).

Petitioner claims that the judicial pardon and expungement granted to him in April, 1982, pursuant to Utah Code Ann. § 77–18–2 (1981 Supp. to Replacement Vol. 8C)[11]

---

**8.** For the full text of the relevant provisions of § 922 and § 1202, see note 1 *supra.*

**9.** For the text of § 925(c), see note 2, *supra.*

**10.** The full text of 18 U.S.C.App. § 1203 is as follows:

§ 1203. Exemptions
This title shall not apply to—·
(1) any prisoner who by reason of duties connected with law enforcement has expressly been entrusted with a firearm by competent authority of the prison; and
(2) any person who has been pardoned by the President of the United States or the chief executive of a State and has expressly been authorized by the President or such chief executive, as the case may be, to receive, possess, or transport in commerce a firearm.

**11.** The text of the Utah Statute is as follows:
77–18–2. Expungement and sealing of court and arrest records.—
(1)(a) Any person who has been convicted of any crime within this state may petition the convicting court for a judicial pardon and for sealing of his record in that court. At the time the petition is filed and served upon the prosecuting attorney, the court shall set a date for a hearing and notify the prosecuting attorney for the jurisdiction of the date set for hearing. Any person who may have relevant information about the petitioner may testify at the hearing and the court, in its discretion, may request a written evaluation of the adult, parole and probation section of the state division of corrections.

(b) If the court finds the petitioner for a period of five years in the case of a class A misdemeanor or felony, or for a period of three years in the case of other misdemeanors or infractions, after his release from incarceration, parole or probation whichever occurs last, has not been convicted of a felony or of a misdemeanor involving moral turpitude and that no proceeding involving such a crime is pending or being instituted against the petitioner and further finds that the rehabilitation of petitioner has been attained to the satisfaction of the court, it shall enter an order that all records in petitioner's case in the custody of that court or in the custody of any other court, agency or official be sealed. The provisions of this subsection shall not apply to violations for the operation of motor vehicle under title 41. The court shall also issue to the petitioner a certificate stating the court's finding that he has satisfied the court of his rehabilitation.
(2)(a) In any case in which a person has been arrested with or without a warrant, that individual after 12 months provided there have been no intervening arrests, may petition the court in which the proceeding occurred, or, if there were no court proceedings, any court in the jurisdiction where the arrest occurred, for an order expunging any and all records of arrest and detention which may have been made, if any of the following occurred:
(i) He was released without the filing of formal charges;
(ii) Proceedings against him were dismissed, he was discharged without a convic-

fulfill the requirements of § 1203 and, further, erase completely his prior convictions so that he is removed from the strictures of § 922 as well as § 1202. Upon analysis of the statute under which petitioner's conviction was expunged, the court cannot agree.

■ First, it is clear that the expungement does not meet the requirements of § 1203. That section requires an *executive* pardon, plus express authorization from the executive to receive, possess, or transport firearms. The specificity of the statute, supported by its legislative history,[12] seems to admit no exceptions or substitutions for these exemption requirements. The courts have been unanimous in holding that state action other than an executive pardon with express authorization to receive, possess, or transport firearms is insufficient to fulfill the requirements of the § 1203 exemption and hence relieve a previously convicted felon of a federal firearms disability under

§ 1202. See, e.g., United States v. Kelly, 519 F.2d 794 (8th Cir.1975); United States v. Matassini, 565 F.2d 1297 (5th Cir.1978); United States v. Sutton, 521 F.2d 1385 (7th Cir.1975); United States v. Allen, 699 F.2d 453 (9th Cir.1982). The judicial pardon of Thompson in April, 1982, was not an executive pardon,[13] and the court has searched both the state expungement statute and the state court's orders of judicial pardon and expungement without finding anything that could be construed as express authorization to receive, possess, or transport firearms. Hence Thompson does not qualify for the § 1203 exemption.

■ Petitioner's second assertion, that his expungement completely erased his prior conviction so that the conviction can no longer serve as a basis for either a § 922 or a § 1202 disability, is somewhat more difficult. The courts are in disagreement on

---

tion and no charges were refiled against him within 30 days thereafter, or he was acquitted at trial; or

(iii) The record of any proceedings against him has been sealed pursuant to subsection (1).

(b) If the court finds that the petitioner is eligible for relief under this subsection, it shall issue its order granting the relief prayed for and further directing the law enforcement agency making the initial arrest to retrieve any record of that arrest which may have been forwarded to the Federal Bureau of Investigation and the Utah Bureau of Criminal Identification.

(c) This subsection shall apply to all arrests and any proceedings which occurred before, as well as those which may occur after, the effective date of this act.

(3) Employers may inquire concerning arrests or convictions only to the extent that the arrests have not been expunged or the record of convictions sealed under this provision. In the event an employer asks concerning arrests which have been expunged or convictions the records of which have been sealed, the person who has received expungement of arrest or judicial pardon may answer as though the arrest or conviction had not occurred.

(4) Inspection of the sealed records shall be permitted by the court only upon petition by the person who is the subject of those records and only to the persons named in the petition.

12. The legislative history of Title VII of the Omnibus Crime Act, which contains § 1203,

consists of remarks on the floor of the Senate and on the floor of the House. A copy of the entire legislative history is published as an appendix in Stevens v. United States, 440 F.2d 144 (6th Cir.1971).

13. The State of Utah presents a special circumstance which may distinguish this case from those cited above. Unlike the states in those cases, Utah has no provision for a "pardon by ... the chief executive" of the State, as required by § 1203. See, Constitution of Utah, Art. VII, § 12. In Utah's unique circumstance, where the governor does not have the power to grant pardons, it is impossible to discern what Congress intended should be the procedure for exempting persons from the § 1202 firearms disability. It may be reasonable to conclude that Congress, had it considered this circumstance, would have intended that the functional equivalent of a governor's pardon, coupled with the express authorization to possess firearms, would be sufficient to exempt a person from the disability. However, since the judicial pardon and expungement, based on an analysis of the Utah expungement statute, could not be considered the functional equivalent of an executive pardon, and since the petitioner has not received express authorization to possess firearms, he would not meet this modified exemption requirement under § 1203. Hence, it is not necessary to determine whether, in Utah, the functional equivalent of an executive pardon is sufficient to meet that requirement of § 1203.

whether a state expungement relieves a former convict of the § 922 disability. On the one hand, the Ninth Circuit and apparently the Seventh Circuit have concluded that state expungement statutes have no effect on the firearms disability. *United States v. Bergeman,* 592 F.2d 533 (9th Cir. 1979); *Thrall v. Wolfe,* 503 F.2d 313 (7th Cir.1974). On the other hand, the Fourth Circuit and arguably the Fifth Circuit hold that a complete and total expungement erases the prior conviction that would otherwise trigger the federal firearms disability. *New Banner Institute, Inc. v. Dickerson,* 649 F.2d 216 (4th Cir.1981), *cert. granted,* 455 U.S. 1018, 102 S.Ct. 1708, 72 L.Ed.2d 132 (1982);[14] *United States v. Matassini,* 565 F.2d 1297, 1309, n. 26 (5th Cir.1978).[15]

There has been no similar disagreement as to the § 1202 disability. To this date no court has held that a state expungement relieves a former convict of this disability. See *United States v. Kelly,* 519 F.2d 794 (8th Cir.1975); *United States v. Sutton,* 521 F.2d 1385 (7th Cir.1975); *United States v. Allen,* 699 F.2d 453 (9th Cir.1982). However, the courts have been unanimous in holding that a federal expungement under the Federal Youth Corrections Act, 18 U.S.C. §§ 5005–5026, provides relief from both § 922 and § 1202. *United States v. Arrington,* 618 F.2d 1119 (5th Cir.1980), *cert. denied,* 449 U.S. 1086, 101 S.Ct. 876, 66 L.Ed.2d 812 (1981); *United States v. Purgason,* 565 F.2d 1279 (4th Cir.1977); *United States v. Fryer,* 545 F.2d 11 (6th Cir.1976).

The rationale of *New Banner* and the Youth Correction Act cases is persuasive[16];

and if Thompson had received his expungement under a statute providing for a complete erasure of the prior conviction, he might have been granted the relief he requests. However, this court need not reach the question of whether an expungement under a statute providing for complete erasure of conviction would furnish relief from the federal firearms disabilities, because the Utah statute in effect at the time of Thompson's expungement, Utah Code Ann. § 77–18–2 (1981 Supp. to Replacement Vol. 8C), did not provide such complete erasure.

Perhaps the predecessor to § 77–18–2 would have furnished Thompson with the relief he seeks. Utah Code Ann. § 77–35–17.5 (1978 Replacement Vol. 8C). It apparently provided a complete erasure of the prior conviction. Subsection 1 provided that upon a petitioner's meeting the requisites of the statute, the court would enter an order sealing all the records of the petitioner's case. It further provided:

> (c) Upon the entry of the order in those proceedings, the petitioner shall be deemed judicially pardoned and the petitioner may thereafter respond to any inquiries relating to convictions of crimes as though that conviction never occurred.

Subsection 2 provided that if the record of conviction were expunged pursuant to subsection 1, then all records of arrest and detention may also be expunged. It further provided:

> Thereafter, the arrest, detention, and any further proceedings in the case *shall be deemed not to have occurred,* and a peti-

---

**14.** In *New Banner,* the court based its decision in part on language from two Tenth Circuit cases. *United States v. Brzoticky,* 588 F.2d 773 (10th Cir.1978); *Barker v. United States,* 579 F.2d 1219 (10th Cir.1978). *Brzoticky* involved a prosecution under § 922 that was predicated on a conviction that had been expunged after the prosecution was commenced. The court implied that if the state conviction had been expunged before the commencement of the federal prosecution, the conviction could not have served as the basis for a federal firearms conviction. In *Barker* the court held that "once one is convicted of a felony he is within the proscription against possession of firearms until that prior conviction is *actually* overturned

or expunged." 579 F.2d at 1226 (emphasis in original). Though these references are certainly not conclusive, it may be inferred from them that the Tenth Circuit would align itself with the Fourth.

**15.** In *Matassini,* the court considered the effect of a governor's pardon on § 922. However, the rationale provided there applies equally well to a judicial pardon and expungement. 565 F.2d at 1309, n. 26.

**16.** A similar, and likewise persuasive, rationale is set forth in the dissent to *United States v. Bergeman,* 592 F.2d 533, 538–42 (9th Cir.1979) (Takasugi, J., dissenting).

tioner may answer accordingly any question relating to their existence.

(Emphasis added). Subsection 4 provided that once the records were sealed, inspection would be permitted only upon petition by "the person who is the subject of those records."

A single Utah case construing the predecessor statute exists, which supports the conclusion that the statute provided a full and complete expungement, legally erasing the prior conviction. The Utah Supreme Court, quoting the language of subsection 1(c), above, held that a felon whose conviction had been expunged could not be impeached as a witness on account of his prior conviction. *State v. Jones*, 581 P.2d 141 (Utah 1978).

However, in 1980 the expungement statute was amended as part of the process of recodifying the Utah Code of Criminal Procedure. Eliminated from the new statute is the language stating that "the petitioner shall be deemed judicially pardoned." Eliminated also is the language stating that "the arrest, detention, and any further proceedings shall be deemed not to have occurred." In place of subsection 1(c) giving the petitioner the right to answer "*any* inquiries relating to convictions of crimes as though that conviction never occurred," (emphasis added) is the following provision:

> (3) Employers may inquire concerning arrests or convictions only to the extent that the arrests have not been expunged or the record of the convictions sealed under this provision. In the event an employer asks concerning arrests which have been expunged or convictions the records of which have been sealed, the person who has received expungement of arrest or judicial pardon may answer as though the arrest or conviction had not occurred.

Utah Code Ann. § 77–18–2(3) (1981 Supp. to Replacement Vol. 8C). Still included in

the statute is the provision that the records of the conviction may be sealed and that inspection of the records thereby sealed may be permitted only upon petition of the person who is the subject of the records.

There is no explanation in the legislative history for the changes in the amended statute,[17] nor have there been any cases construing the new statute. The new language, especially when construed in light of the former language, seems to place a limitation on the effect of the judicial pardon and expungement. Though the legislative intent is not entirely clear, the court must conclude that the statute was changed for a purpose; and that purpose, from the substance of the change, evidently was to limit the effect of a judicial pardon and expungement. Hence, since 1980 a judicial pardon and expungement under section 77–18–2 is not a complete and unqualified expungement that erases the prior conviction sufficiently to relieve petitioner Thompson from his firearms disabilities.

In an attempt to resolve the court's concerns about subject matter jurisdiction and sovereign immunity, Thompson filed a second Motion to Amend Complaint on August 6, 1982. Since the jurisdiction and sovereign immunity issues have been resolved in favor of Thompson, the court does not see the necessity of granting the second motion to amend. A pre-trial scheduling conference would be helpful at this point to enable the court to discuss with counsel means of expediting resolution of the remaining claims not disposed of by this order.

Accordingly,

IT IS HEREBY ORDERED that petitioner's Motion for Summary Judgment be denied.

IT IS FURTHER ORDERED that the second Motion to Amend Complaint be presently denied.

---

17. The amendment to the expungement statute was enacted on February 1, 1980, as part of House Bill 32, which consisted of the entire code of criminal procedure for the State of Utah. The Bill was hastily enacted in a Budget Session of the Legislature, and consequently little attention was given to the individual provisions of the Bill. There were no comments on the floor of either house regarding the expungement provision, which was enacted by L.1980, ch. 15, § 2.

IT IS FURTHER ORDERED that a pre-trial scheduling conference be set for *Monday, January 24, 1983, at 11:00 a.m.*