**Jane DOE, Petitioner and Appellee,**

v.

**UTAH DEPARTMENT OF PUBLIC SAFETY; Peace Officer Standards and Training; Ted E. Leamons, Director; William L. Find; and John Does I through IV, Respondents and Appellants.**

No. 860138.

Supreme Court of Utah.

Oct. 20, 1989.

David L. Wilkinson, Dave B. Thompson, Salt Lake City, for respondents and appellants.

L. Zane Gill, Salt Lake City, for petitioner and appellee.

HALL, Chief Justice:

Respondents appeal a trial court order ruling that the Division of Peace Officer Standards and Training ("P.O.S.T."), a Division of the Utah Department of Public Safety, may not consider convictions expunged under Utah Code Ann. § 77–18–2 (Supp.1985) (amended 1987) in deciding whether to grant or deny certification to an individual under Utah Code Ann. § 67–15–10.5 (1986) (amended 1987 & 1988).[1]

In 1984, petitioner obtained expungements of her criminal convictions. Upon later application to P.O.S.T. for peace officer certification (a requirement for employment with the Department of Corrections), petitioner was informed that a P.O.S.T. committee would meet to determine whether, based upon her expunged convictions, there was cause for the issuance of an administrative complaint seeking the denial of her certification. P.O.S.T. apparently based its decision for this hearing upon information it had sought concerning petitioner's prior expungements and upon peti-

tioner's refusal to request that the court unseal her records so that P.O.S.T. could inspect them. P.O.S.T. required that petitioner unseal her records in order to be considered for certification even though she had responded to P.O.S.T.'s earlier inquiries and furnished documents verifying the court's expungements of the enumerated offenses.

Prior to petitioner's certification hearing, she petitioned the trial court to prohibit P.O.S.T. from considering her expunged convictions. The trial court granted petitioner's motion, concluding in part that P.O.S.T. had no authority to compel her to petition for the unsealing of her records and that P.O.S.T. could not consider the existence of any expungement in determining whether to issue certification.

On appeal, P.O.S.T. essentially contends that the Utah expungement statute does not prohibit a "licensing agency" such as itself from considering expunged convictions. This claim is in contravention to the statute's language and intent.

Utah's expungement statute, Utah Code Ann. § 77–18–2 (Supp.1985), provides:

Expungement and sealing of records. (1)(a) Any person who has been convicted of any crime within this state may petition the convicting court for a judicial pardon and for sealing of his record in that court. At the time the petition is filed and served upon the prosecuting attorney, the court shall set a date for a hearing and notify the prosecuting attorney for the jurisdiction of the date set for hearing. Any person who may have relevant information about the petitioner may testify at the hearing and the court, in its discretion, may request a written evaluation of the adult parole and probation section of the state Department of Corrections.

(b) If the court finds the petitioner for a period of five years in the case of a class A misdemeanor or felony, or other misdemeanors or infractions, after his

---

**1.** Both Utah Code Ann. § 77–18–2 and § 67–15–10.5 were amended subsequent to the initiation of this action. The later amendments have no application in this case, and we do not assess their legal force or effect. *See generally* Utah Const. art. I, § 18; U.S. Const. art. I., §§ 9, 10 (ex post facto law constitutional prohibitions).

release from incarceration, parole, or probation whichever occurs last, has not been convicted of a felony or of a misdemeanor involving moral turpitude and that no proceeding involving such a crime is pending or being instituted against the petitioner and further finds that the rehabilitation of petitioner has been attained to the satisfaction of the court, *it shall enter an order that all records in petitioner's case in the custody of that court or in the custody of any other court, agency or official be sealed.* The provisions of this subsection shall not apply to violations for the operation of motor vehicle under Title 41. The court shall also issue to the petitioner a certificate stating the court's finding that he has satisfied the court of his rehabilitation.

(2)(a) In any case in which a person has been arrested with or without a warrant, that individual after 12 months, provided there have been no intervening arrests, may petition the court in which the proceeding occurred, or, if there were no court proceedings, any court in the jurisdiction where the arrest occurred, for an order *expunging any and all records* of arrest and detention which may have been made, if any of the following occurred:

(i) He was released without the filing of formal charges;

(ii) Proceedings against him were dismissed, he was discharged without a conviction and no charges were refiled against him within 30 days thereafter, or he was acquitted at trial; or

(iii) The record of any proceedings against him has been sealed pursuant to Subsection (1).

(b) *If the court finds that the petitioner is eligible for relief under this subsection, it shall issue its order granting the relief prayed for* and further directing the law enforcement agency making the initial arrest to retrieve any record of that arrest which may have been forwarded to the Federal Bureau of Investigation and the Utah Bureau of Criminal Identification.

(c) This subsection shall apply to all arrests and any proceedings which occurred before, as well as those which may occur after, the effective date of this act.

(3) *Employers may inquire concerning arrests or convictions only to the extent that the arrests have not been expunged or the record of convictions sealed under this provision. In the event an employer asks concerning arrests which have been expunged or convictions the records of which have been sealed, the person who has received expungement of arrest or judicial pardon may answer as though the arrest or conviction had not occurred.*

(4) Inspection of the sealed records shall be permitted by the court only upon petition by the person who is the subject of those records and only to the persons named in the petition.

(Emphasis added.)

Generally speaking, an expungement statute is

a legislative provision for the eradication of a record of conviction or adjudication upon fulfillment of prescribed conditions, usually the successful discharge of the offender from probation and the passage of a period of time without further offense. It is not simply a lifting of disabilities attendant upon conviction and a restoration of civil rights, though this is a significant part of its effect. It is rather a redefinition of status, a process of erasing the legal event of conviction or adjudication, and thereby restoring to the regenerate offender his *status quo ante.*[2]

In comparison, a pardon primarily

remits punishment and removes some disabilities, but does not erase the legal event determinative of the offender's status *qua* offender, *i.e.*, the conviction itself. It is the status resulting from the

---

**2.** Gough, *The Expungement of Adjudication Records of Juvenile and Adult Offenders: A Problem of Status,* 1966 Wash.U.L.Q. 147, 149 (footnote omitted; emphasis in original) [hereinafter Gough].

adjudication of guilt, more than any punishment imposed, which is characteristic of conviction; if the disabilities of conviction are to be removed effectively and the reformed offender restored to society, the remedy chosen [namely, expungement,] must reach the genesis of the status.[3]

Expungement statutes, then, seek to erase direct and indirect social reprisals which are engendered by an offender's "brand as an adjudicated criminal."[4] The importance of the expungement concept is particularly evident in the area of employment, an arena which influences a person's concept of self, self-worth, and the values which guide conduct.[5] As noted by one commentator,

> The right to work has been acclaimed "the most precious liberty that man possesses." For the ex-convict, however, the right to work in an occupation of his choice is at best a qualified right and in many instances is nonexistent. A job applicant with a criminal record may face substantial prejudice on the part of many prospective employers.[6]

Consequently, in addition to providing for the eradication of the legal event of conviction and adjudication, expungement statutes may expressly limit an employer's inquiries regarding arrests or convictions to those that have not been expunged and their records sealed.[7] Utah's expungement statute is of this type.

Indeed, under the instant statute, once the court determines to its satisfaction that the petitioner has been rehabilitated, it orders the sealing of all records in the petitioner's case. It may then order all records of the petitioner's arrest and detention expunged. Inspection of the sealed records is thereafter only permitted upon the petitioner's request. In addition, subsection 77–18–2(3) ("the employer provision") of Utah's expungement statute separately provides that employers may inquire regarding arrests or convictions only to the extent that they have not been expunged and their records sealed. This distinct provision emphasizes that if employers so inquire, petitioners who have had their offenses expunged may continue to respond as if the arrest and conviction "had not occurred."[8] The intent as well as the force and effect of the entire statute is clear. Upon qualification, records may be sealed and offenses expunged such that even employers may not ask or obtain information concerning the same.

The legislature's wisdom in providing for a method whereby genuinely rehabilitated offenders may benefit by reformation through having their offenses expunged is evidenced in the instant case. In ruling on petitioner's motion, the trial court had before it at least fourteen certificates of recognition or certification which petitioner had received and more than eighteen letters from federal, state, and local law enforcement and correction agency personnel who, although cognizant of petitioner's preexpungement background, nonetheless praised her honesty, trustworthiness, and high moral character. These individuals commented on petitioner's complete rehabilitation and on her exemplary voluntary public service, apparently amounting to more than eight thousand hours over several years, to various law enforcement and justice agencies and community organizations. In sum, they unreservedly recom-

---

3. *Id.* at 150 (footnotes omitted; emphasis in original). Expungement "means to destroy or obliterate"; it implies a physical annihilation. *Andrews v. Police Court of Stockton,* 123 P.2d 128, 129 (Cal.Ct.App.1942) (citation omitted), *cited in State v. Chambers,* 533 P.2d 876, 878 (Utah 1975) (word "expunge" is expressive of cancel, revoke, set aside); *see also Dixon v. McMullen,* 527 F.Supp. 711, 718 (N.D.Tex.1981) (effect of pardon).

4. Gough at 153.

5. *See id.*

6. *Special Project: The Collateral Consequences of a Criminal Conviction,* 23 Vand.L.Rev. 929, 1001 (Oct.1970) (quoting *Barsky v. Board of Regents,* 347 U.S. 442, 472, 74 S.Ct. 650, 666, 98 L.Ed. 829 (1954) (Douglas, J., dissenting); citing *Allgeyer v. Louisiana,* 165 U.S. 578, 589, 17 S.Ct. 427, 431, 41 L.Ed. 832 (1897); *Crowley v. Christensen,* 137 U.S. 86, 89, 11 S.Ct. 13, 15, 34 L.Ed. 620 (1890)).

7. *See* Gough at 188.

8. Utah Code Ann. § 77–18–2(3) (Supp.1985).

mended her for P.O.S.T. certification, opining that she had "paid a service to society far greater than any debt she may have incurred."

Nevertheless, as support for asserting that it should be permitted to ask about and obtain evidence of the expunged offenses, P.O.S.T. focuses upon the fact that the 1980 amendment to section 77–18–2 added the employer provision and deleted explicit assurances to petitioners that offenses are expunged pursuant to this statute. P.O.S.T. urges us to view that amendment and to construe the statute so as to nullify the general sealing and expungement provisions by completely restricting the scope of the statute's protection for petitioners to circumstances involving only employment. This we cannot do.

The employer provision is only one part of Utah's expungement statute. By focusing in part upon the restrictions on employers and the rights of potential employees as they are affected by the expungement statute, the legislature did not intend to limit expungement to that arena, but rather, sought to emphasize the fact that in addition to all else, evidence of convictions and arrests are often tantamount to an automatic bar to employment of individuals so classified. The mere fact that the employer provision exists does not make it an exception to or limitation upon the other general expungement provisions, just as the fact that the statute's failure to explicitly limit the rights of licensing agencies and others to inquire and receive information of expungement does not signify that such entities are entitled to the same or that expungement is "waived" in such instances. And the statute's failure to provide superfluous assurances of the effect of expunction does not negate the fact that offenses are expunged pursuant to the statute such that successful petitioners need not reveal information concerning the same. Were it otherwise, the statute

would not strictly prohibit *all* entities and individuals except the petitioner (and those obtaining his or her release) from inspecting expunged records.[9]

To construe the statute as P.O.S.T. would have us do would be to allow all entities, individuals, and licensing agencies, in effect, all those determined to be nonemployers, to inquire and obtain information regarding expunged offenses and inspect sealed records. "Employers" themselves could also circumvent the statute by utilizing other institutions and agents to obtain information of potential employees' expunged offenses. Additionally, the trial court noted that under P.O.S.T.'s asserted analysis, "a rehabilitated felon could be denied access to any profession requiring certification or licensure such as teaching, real estate, stock trading, medicine, law, [and] even used car deal[ing]." This could also conceivably affect individuals seeking to become, among other things, licensed barbers, cosmetologists, sanitation workers, hearing aid specialists, dieticians, and landscape architects.[10] In sum, P.O.S.T.'s proposal would emasculate the statute and contravene legislative intent while creating a ridiculous result.

Furthermore, P.O.S.T. and other so-called "licensing agencies" with control over an individual's employment and with statutory,[11] agency, or other direct association with actual "day-to-day employers" might themselves be viewed under a broad statutory application as "super employers" subject to the employer provision's express prohibition. Certainly, the effect of a noncertification decision could likely deny petitioner the employment she is apparently otherwise qualified for in the instant case.[12]

Finally, as one commentator noted, "[I]t is not uncommon for the law to provide that despite the vacation of conviction under such an act, the conviction may nevertheless be considered for licensing and dis-

9. *See* Utah Code Ann. § 77–18–2(4) (Supp.1985).

10. *See generally* Utah Code Ann. §§ 58–1–1 through 58–55–20 (1986 & Cum.Supp.1989) (occupations and professions requiring licensing).

11. *See* Utah Code Ann. §§ 67–15–1, 67–15–4 to 67–15–7 (1986 & Supp.1989).

12. *See* Utah Code Ann. §§ 64–13–24, 67–15–4 to 67–15–8, 67–15–10.5 (1986 & Supp.1988).

ciplinary purposes."[13] Nevertheless, neither Utah's applicable expungement statute nor P.O.S.T.'s enabling statutes[14] explicitly cloak P.O.S.T. with the authority to consider or even inquire about a petitioner's expunged offenses or record or require her to unseal the same. Had the legislature intended otherwise, it could have stated so as it did in 1987 and 1988.[15] This fact cannot be ignored and further supports the conclusion that under the applicable provisions entities such as P.O.S.T. cannot consider or obtain information regarding expungement.

Accordingly, although exceptions to expungement may be prudent in some limited areas for the public's protection,[16] such exceptions are not provided for in the applicable statute and thus are not permitted by law. Such is the case regardless of views otherwise expressed[17] as well as statutory[18] or other interests such entities may have, or believe they have, to the contrary.

In holding as we do, we reiterate that Utah's expungement statute provides that upon a petitioner's application and qualification thereunder, the court shall order that the arresting law enforcement agency retrieve any arrest records from the Federal Bureau of Investigation and the Utah Bureau of Criminal Identification and that *all* of the petitioner's records in the custody of any court, agency, and official be sealed. Inspection of such records is thereafter permitted *only* upon request by the petitioner. The reason for this procedure is obvious. "If one agency retains unsealed an arrest or crime report, fingerprint card, 'mug shot,' or other record naming petitioner, a check is likely to reveal it, and the expungement will be rendered nugatory."[19]

Notwithstanding this explicit requirement in Utah's statute, P.O.S.T. obtained information concerning petitioner's expungement in the instant case. In her verified memorandum to the trial court, petitioner noted that when asked about the discovery of the expungement, P.O.S.T.'s certification supervisor stated that P.O.S.T. had obtained information regarding the same from using her fingerprints and after contacting someone "in the courts." Regardless of the source of the information, P.O.S.T. should not have been able to obtain the same and should not have continued to seek it. The fact that the informa-

---

**13.** Gough at 157 (footnote omitted). In some states, expunction may mean that the state has only provided a means for the court not to accord a conviction certain effects or disabilities under state law. *Dickerson v. New Banner Institute, Inc.*, 460 U.S. 103, 115, 103 S.Ct. 986, 993, 74 L.Ed.2d 845 (1983), *superseded by statute as stated in United States v. Sherbondy*, 865 F.2d 996 (9th Cir.1988); *United States v. Balascsak*, 873 F.2d 673 (3d Cir.1989). In *State v. Schreiber*, 121 Utah 653, 657–58, 245 P.2d 222, 224 (1952), this Court implied in dicta that expungement of a criminal record does not "gainsay the fact that the accused was convicted of the crime of abortion nor the fact that the crime was actually committed." However, this was not the Court's holding, and the case specifically involved a "suspension of sentence" provision unlike the present expungement statute. *See generally* Utah Code Ann. § 105–36–17 (1943) (suspension of sentence); *see also* Gough at 151–57 (statutes only permitting the setting aside of convictions are clearly not expungement statutes).

**14.** Utah Code Ann. § 67–15–1 to 67–15–10.5 (1986) (amended 1987 & 1988).

**15.** Utah Code Ann. §§ 67–15–10.5(2)(a), 77–18–2(5)(a) (Supp.1989).

**16.** *Special Project: The Collateral Consequences of a Criminal Conviction*, 23 Vand.L.Rev. at 1004 ("The United States Supreme Court has upheld the local regulation of essential occupations as a valid exercise of police power necessary to the safety, health, good order, and morals of the community. The Court, however, has consistently emphasized that a state cannot, under the guise of protecting the public, arbitrarily deny access to lawful occupations by imposing unreasonable restrictions.") (citing *Dent v. West Virginia*, 129 U.S. 114, 9 S.Ct. 231, 32 L.Ed. 623 (1889); *J. Burns Baking Co. v. Bryan*, 264 U.S. 504, 44 S.Ct. 412, 68 L.Ed. 813 (1924)).

**17.** *See, e.g., Thompson v. Department of the Treasury*, 557 F.Supp. 158, 167 (D.Utah 1982); *see also Halladay v. Cluff*, 685 P.2d 500, 507–08 n. 7 (Utah 1984) ("[T]he meaning and intent of this opinion should not be judged by the content of the dissent, because we do not acquiesce in the dissent's interpretation of this opinion.").

**18.** *See generally* Utah Code Ann. §§ 67–15–1 to 67–15–10.5 (1986).

**19.** Gough at 164 (footnote omitted).

tion was available to P.O.S.T. was in direct contravention to statute and petitioner's rights thereunder.[20] Agencies of the state's executive branch are not exempt from express legislative directives. Petitioner's records are to be retrieved and sealed, and the trial court is directed to so order.

The judgment of the trial court is affirmed.

DURHAM, J., concurs.

ZIMMERMAN, Justice (concurring):

I join the Court in affirming the trial court. Although section 77–18–2 of the Code could be read to permit the revealing of the prior convictions, *see Thompson v. Department of the Treasury*, 557 F.Supp. 158, 167 (D.Utah 1982), a result I think more proper as a policy matter, the reading given the statute by the Chief Justice is more in harmony with the statute's apparent purpose.

The result reached is troubling insofar as it permits an applicant for certification as a police officer to conceal from P.O.S.T. the fact of prior criminal convictions. However, in 1987 the legislature amended the statute to specifically provide that the Utah Bureau of Criminal Identification may divulge information concerning sealed records of arrests and convictions "for certification of an applicant for peace officer status...." Utah Code Ann. § 77–18–2 (1989 Supp.). Thus, the result reached today is not likely to be repeated.

HOWE, Associate Chief Justice (dissenting):

I dissent. The majority opinion reaches its result by indulging in generalities about what expungement statutes "generally" provide, based largely on a law review article which was written more than two decades before the enactment of the Utah statute. Instead, the majority should have focused on the wording of our statute and the significant legislative history behind that wording.

The expungement statute which is under examination in this case, Utah Code Ann. § 77–18–2 (Supp.1985) (amended 1987), was enacted in 1980. It is set out in full in the majority opinion. Prior to 1980, our expungement statute was numbered section 77–35–17.5 (1978). In that statute, there was a subsection 1(c), which provided:

> Upon the entry of the order in those proceedings, the petitioner shall be deemed judicially pardoned and the petitioner may thereafter respond to *any inquiries* relating to convictions of crimes as though that conviction never occurred.

(Italics added.) In 1980, the legislature amended the statute by deleting entirely subsection 1(c) and in its stead enacted a new subsection (3), which provides:

> *Employers* may inquire concerning arrests or convictions only to the extent that the arrests have not been expunged or the record of convictions sealed under this provision. In the event *an employer* asks concerning arrests which have been expunged or convictions the records of which have been sealed, the person who has received expungement of arrest or judicial pardon may answer as though the arrest or conviction had not occurred.

(Italics added.) Other minor changes were made in the statute which are not pertinent here and the section was renumbered 77–18–2.

It is readily apparent that the effect of the 1980 amendment was to narrow the class of persons to whom the convicted person could represent that he or she had never been convicted. Prior to 1980, the convicted person could "respond to any inquiries relating to convictions of crimes as though that conviction never occurred." After 1980, however, that privilege was limited to only inquiries made by employers. As the majority opinion correctly points out, the legislature's intent was to assist convicted persons in obtaining em-

---

**20.** The current version of Utah Code Ann. § 77–18–2(6) (Supp.1989) seemingly recognizes this problem regarding the confidentiality of sealed records. It provides for a criminal penalty for willful violation of expungement and sealing provisions.

ployment. To any employer who inquired about arrests or convictions, the person could legally answer "as though the arrest or conviction had not occurred." But as to all other persons who were not employers or prospective employers, the legislature did not extend that privilege. One can search the statute in vain for any privilege the convicted person has to deny arrests and convictions to anyone but employers and prospective employers.

The majority glides over this glaring change in the statute by observing that the record of arrest and conviction is sealed and can be inspected only upon court order upon petition by the convicted person and only by him. That is true, but that does not limit persons other than employers from making *inquiry* to the convicted person of his criminal records. P.O.S.T. is not interdicted by the statute since P.O.S.T. is not an employer or a prospective employer. Thus, P.O.S.T. is free to inquire of the petitioner as to any prior arrests or convictions. Since the statute no longer gives her the privilege to answer to P.O.S.T. "as though that conviction never occurred," she has no privilege to deny her prior arrest and conviction when asked. P.O.S.T. cannot directly inspect her records but can do so only through her. She may refuse to disclose her conviction and may refuse to allow P.O.S.T. to inspect her records. Those decisions are hers alone to make. However, P.O.S.T. may also be able to deny her certification. Whether P.O.S.T. could do so, in view of all the facts, is not ripe for decision since P.O.S.T. has not yet acted on her application for certification. Certainly, P.O.S.T. may not act arbitrarily in this matter.

The majority incorrectly assumes that since the records are sealed and can only be inspected upon permission of the petitioner, this forecloses P.O.S.T. from making an inquiry. That is an incorrect interpretation. Persons other than employers may inquire about prior arrests and convictions but can inspect records only through the applicant and with the applicant's permission. Thus, the majority's argument that employers could "circumvent the statute by utilizing other institutions and agents to obtain information" regarding expunged offenses and the inspection of sealed records is completely unfounded. No one can inspect the records without the permission of the convicted person.

The majority also slides over the "employer provision" in the 1980 statute without explaining why the legislature would uselessly amend the statute by adding a subsection prohibiting inquiries by employers when they, according to the majority, were already prohibited, along with everyone else, from inquiring. It was not done just to emphasize the lack of right by an employer to inquire, as the majority suggests, since the provision giving the convicted person the right to answer "*any inquiries* ... as though that conviction never occurred" was deleted from the statute at the same time. The majority simply ignores that deletion.

I join with the majority in its laudatory remarks concerning the rehabilitation of the petitioner. From as early as the return of the prodigal son as recorded in the New Testament, families and mankind in general have always rejoiced when one who has strayed returns to the fold. It may well be too, as the majority points out, that the petitioner has paid a debt to society far greater than she may have incurred. However, despite her commendable performance, it is the legislature's prerogative, and its prerogative alone, to write and enact an expungement statute and to determine the bounds of its beneficence. The legislature in 1980 spoke in clear and unmistakable terms and limited the effect of an expungement to inquiries made by employers. No such limitation was placed upon a state licensing agent such as P.O.S.T. which licenses persons who work in a sensitive area where great public interest obtains. There is a wide difference between the need for inquiry as to past arrests and convictions when hiring a person as a laborer, carpenter or sales person and when the person is being hired as a peace officer. The legislature could have reasonably decided that when a person applies for P.O.S.T. certification to become a peace officer, his or her complete past records may need

to be examined despite repentance and expungement. Great trust and responsibility is placed in our peace officers. Public interest demands that persons so certified and hired have impeccable qualifications. This may well include scrutiny of the major events in a person's background.

The conclusions which I have reached in this opinion accord with the interpretation given to our 1980 statute by Chief Judge Aldon J. Anderson in *Thompson v. Department of the Treasury, Bureau of Alcohol, Tobacco and Firearms,* 557 F.Supp. 158, 167 (D.Utah 1982), where he correctly observed that the statute did not universally erase prior convictions. In his opinion in that case, Judge Anderson observed:

> There is no explanation in the legislative history for the changes in the amended statute, nor have there been any cases construing the new statute. The new language, especially when construed in light of the former language, seems *to place a limitation on the effect of the judicial pardon and expungement.* Though the legislative intent is not entirely clear, the court must conclude that the statute was changed for a purpose; and that purpose, from the substance of the change, evidently was *to limit the effect of a judicial pardon and expungement.* Hence, since 1980 a judicial pardon and expungement under section 77–18–2 *is not a complete and unqualified expungement* that erases the prior conviction sufficiently to relieve petitioner Thompson from his firearms disabilities.

(Italics added.) By ignoring and disregarding this significant legislative history, the majority misconstrues the statute and interprets it as if the 1980 amendment had never been made. I would reverse the trial court.

STEWART, J., concurs in the dissenting opinion of HOWE, Associate C.J.