Gregory T. AMBUS, Plaintiff–Appellant,

v.

GRANITE BOARD OF EDUCATION, Defendant–Appellee.

No. 91–4015.

United States Court of Appeals, Tenth Circuit.

Sept. 24, 1992.

Stephen W. Cook of Cook & Davis, Salt Lake City, Utah, for plaintiff-appellant.

M. Byron Fisher (Michael L. Chidester, on brief), Fabian & Clendenin, Salt Lake City, Utah, for defendant-appellee.

Before LOGAN, MOORE and BALDOCK, Circuit Judges.

LOGAN, Circuit Judge.

Plaintiff Gregory T. Ambus appeals the district court's grant of summary judgment against him in his suit under 42 U.S.C. § 1983 for damages and reinstatement against the Granite School District Board of Education (Board), for violating his due process rights under the Fifth and Fourteenth Amendments when it suspended and then terminated his employment as a junior high school teacher. On appeal he argues that the court erred in (1) ruling that the school district is entitled to immunity under

the Eleventh Amendment; (2) finding that a presuspension hearing was unnecessary and that postsuspension due process was provided; (3) ordering a new evidentiary hearing; and (4) finding that the new hearing before the Board provided due process.[1]

## I

Plaintiff was under contract with the Board as a tenured teacher at Kearns Junior High School in Salt Lake City. The employment contract was subject to a "Professional Agreement," II R. doc. 29 at ¶ 10, and the Utah Orderly School Termination Procedures Act, Utah Code Ann. §§ 53A–8–101 to –107, *id.* at ¶ 11.

Plaintiff was arrested on April 7, 1986, and charged with two counts of distributing marijuana and one count of agreeing to distribute. The next day plaintiff's wife informed the school principal that plaintiff would not be at school that day because of the arrest and charges. Later that same day the assistant superintendent, Dr. Loren Burton, after talking with plaintiff about the arrest and charges and confirming them through the district security officer, notified plaintiff by letter that he was suspended without pay "on the alleged charges of a third degree felony recorded as distributing and agreement to sell a controlled substance." II R. doc. 34, ex. A. The letter stated that "[f]urther disposition of your teaching status will be determined by the outcome of the alleged charges," and informed plaintiff that he was "welcome at any time to an informal hearing and further discussion with your representative present." *Id.*

The nature of the contacts between plaintiff and Burton thereafter is disputed. Burton asserts that there were at least six meetings or phone calls between plaintiff and himself and that plaintiff refused to explain any of the circumstances of the charges. Plaintiff asserts there was no

meeting, and that the phone conversations were to tell Burton of the trial date postponements.

In December 1986, the charges against plaintiff were dismissed by an agreement in which plaintiff became an informant for the Salt Lake police department. The Board thereafter terminated plaintiff's employment effective February 27, 1987, stating that it was for "conduct by you which violates the criminal law of this State or of the United States." II R. doc. 34, ex. B. Plaintiff requested a hearing pursuant to the Professional Agreement. Before the hearing was held, a state court issued an expungement order relating to plaintiff's arrest. The order sealed and expunged all records in the case, provided that plaintiff be judicially pardoned, and provided that no records in the case held by any "court, agency or official" could be inspected except on court order at plaintiff's request. *Id.* ex. C. On May 19, 1987, a different judge of the same state court denied the school district's motion to reopen the record in the case but also denied plaintiff's motion to prohibit testimony. The court stated that "Detective Oliver, or other law enforcement personnel, may testify to the conduct of [plaintiff]." *Id.* ex. D. That same day a hearing examiner, appointed by the Board, held a hearing at which plaintiff was afforded an opportunity to produce evidence and cross-examine witnesses. The hearing examiner stated he was bound by the order of expungement and refused to hear evidence of the criminal charges against plaintiff, or his criminal record, but did allow a detective involved in the arrest (Detective Oliver) to testify.

The hearing examiner concluded that there was not proof beyond a reasonable doubt nor even clear and convincing evidence that plaintiff had engaged in criminal conduct. The hearing examiner "strongly recommended that the termination be re-

---

1. Because of our disposition of the Eleventh Amendment issue we need not reach plaintiff's alternative position that the district court erred in denying his motion to file an amended complaint asserting individual capacity liability of the school board members. Although plaintiff's brief mentions the issue of punitive damages, it does not address the issue, so we consider it waived. Plaintiff's brief indicates that the denial of his motion for reconsideration is issue VI, but does not separately address issue VI. We consider this issue to be adequately raised under issue IIIA.

versed and [plaintiff] be reinstated," as of the beginning of the next school year. *Id.* ex. E at 17. The Board "appealed" the recommendation and notified plaintiff that a hearing before the Board would be held; that plaintiff or his counsel would be allowed a fifteen minute presentation; and that no testimony or additional evidence would be accepted. After the hearing, the Board met in executive session on two occasions and ultimately voted to reject the hearing examiner's recommendation, and to uphold termination of plaintiff's employment.

Plaintiff later filed this § 1983 action. The district court granted summary judgment in favor of defendants as to plaintiff's first six causes of action, but finding that irregularities may have occurred during the Board review of the hearing examiner's recommendation, the court did not rule on plaintiff's other causes of action and directed the Board to conduct a new hearing. The district court directed the Board to respect the state court expungement orders but stated that "the Board may consider any direct evidence of plaintiff's conduct" that is relevant. I R. doc. 69. Plaintiff then filed a motion to prohibit the Board from using expunged records or testimony concerning the events involved in the drug arrest. The district court denied the motion for a protective order and stated that the Board "may elicit testimony from participants in the alleged criminal action but may not use records expunged and sealed by the [c]ourt." II R. doc. 72.

At the new hearing the Board introduced testimony from the arresting officer and the paid informant. Thereafter, the Board voted to uphold the earlier decision to terminate plaintiff's contract. The Board made findings of fact regarding its decision. Plaintiff then contested the Board's findings, claiming that: (1) there was no rational nexus between the findings and plaintiff's ability to teach; and (2) the Board violated due process by allegedly having district administrators present during the Board's deliberations. The district court disagreed, finding that there was a rational nexus and that the second Board hearing provided due process. As to the

first Board hearing, however, the court found that plaintiff was denied due process and was entitled to compensatory damages and an award of attorney's fees on this issue. The Board then asserted immunity under the Eleventh Amendment. Plaintiff argued that the Board is not immune, but in the alternative moved to amend to add individual board members as defendants. The court ruled that the Board was immune from suit in federal court, citing *Harris v. Tooele County School District,* 471 F.2d 218 (10th Cir.1973), and *Martinez v. Board of Education of Emery County School District,* 724 F.Supp. 857 (D.Utah 1989), and denied plaintiff's motion to amend. The court also held that its earlier ruling allowing evidence relative to conduct involved in the expunged charges was correct, distinguishing *Ambus v. Utah State Board of Education,* 800 P.2d 811 (Utah 1990). Plaintiff appealed, alleging the points of error set out above.

In reviewing the district court's grant of summary judgment we "examine the record to determine if any genuine issue of material fact was in dispute; if not, [we] must decide if the substantive law was correctly applied." *Osgood v. State Farm Mut. Auto. Ins. Co.,* 848 F.2d 141, 143 (10th Cir.1988). We will affirm a grant of summary judgment if the record "shows that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Celsius Energy Co. v. Mid America Petroleum, Inc.,* 894 F.2d 1238, 1239 (10th Cir.1990) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

II

Because an Eleventh Amendment defense is jurisdictional, *see Garcia v. Board of Educ. of Socorro Consol. Sch. Dist.,* 777 F.2d 1403, 1405 (10th Cir.1985), *cert. denied,* 479 U.S. 814, 107 S.Ct. 66, 93 L.Ed.2d 24 (1986), we begin by addressing plaintiff's claim that the district court erred in finding the Board immune from liability under the Eleventh Amendment.

■ The Eleventh Amendment bars a suit for damages against a state in federal court unless the state waives its immunity. *See, e.g., Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1354–55, 39 L.Ed.2d 662 (1974). Congress did not abrogate the states' Eleventh Amendment immunity in enacting § 1983. *See, e.g., Quern v. Jordan,* 440 U.S. 332, 341, 99 S.Ct. 1139, 1145, 59 L.Ed.2d 358 (1979). Eleventh Amendment immunity extends to state agencies that act as arms of the state, but it does not extend to counties, cities, or other political subdivisions of the state. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977). Thus, the issue before us is whether the Granite Board of Education is an arm of the state entitled to Eleventh Amendment immunity, or whether the Board is a political subdivision subject to suit in federal court.

In *Harris v. Tooele County School District,* 471 F.2d 218 (10th Cir.1973), this court held that a Utah school district is entitled to the state's Eleventh Amendment immunity. *Id.* at 221. In *Harris* we relied in part on Utah Supreme Court cases from 1964 and earlier stating that school districts are instrumentalities and agencies of the state. *Harris* also relied on the manner in which Utah school districts are financed, because "[w]hen it is apparent a judgment against a political subdivision will ultimately reduce state funds, the action is in essence one for recovery of money from the state." *Id.* at 220. We found that under Utah law governing school finance the cost of school programs was divided between the state and the local school districts and concluded that because "the possibility exists that a money judgment rendered in federal court against [the school district] might be paid at least partially out of state funds," Eleventh Amendment immunity applied. *Id.*

There have been two subsequent developments which lead us to conclude that *Harris* no longer controls, and that we must hold this Utah school district is not entitled to the state's Eleventh Amendment immunity. The first subsequent development is the Supreme Court's 1977 decision in *Mt. Healthy.* There the Supreme Court considered whether an Ohio school district is a state agency or a political subdivision for purposes of the Eleventh Amendment. 429 U.S. at 279–81, 97 S.Ct. at 571–573. In reaching its decision the Court reasoned:

> The answer depends, at least in part, upon the nature of the entity created by state law. Under Ohio law the "State" does not include "political subdivisions," and "political subdivisions" do include local school districts.... [A local school board] is subject to some guidance from the State Board of Education, and receives a significant amount of money from the State. But local school boards have extensive powers to issue bonds, and to levy taxes within certain restrictions of state law. On balance, the record before us indicates that a local school board such as petitioner is more like a county or city than it is like an arm of the State. We therefore hold that it was not entitled to assert any Eleventh Amendment immunity from suit in the federal courts.

*Id.* at 280–81, 97 S.Ct. at 572–73.

*Mt. Healthy* suggests that in resolving whether a school district is entitled to Eleventh Amendment immunity we look first to the legal nature of local school districts. The Utah Constitution provides that counties are legal subdivisions of the state, and school districts are political subdivisions of counties. Utah Const. art. XI, § 1. Utah school districts can sue and be sued, Utah Code Ann. § 53A–3–401(3), and are considered municipalities for bonding purposes, *id.* § 11–14–1(1).

*Mt. Healthy* also suggests that we consider the relative autonomy and control afforded the local school boards, a factor not addressed in *Harris.* The Utah Constitution provides that the state board of education has "general control and supervision of the public education system." Utah Const. art. X, § 3; *see also* Utah Code Ann. § 53A–1–402 (state board "shall establish rules and minimum standards for the public schools"). This is an indication of more state control than the "some guidance" in *Mt. Healthy.* Other circuits have found

language similar to Utah's as supporting a finding that local school districts are not alter egos of the state. *See, e.g., Rosa R. v. Connelly*, 889 F.2d 435, 437 (2d Cir.1989) (Connecticut state board given "general supervision and control"), *cert. denied*, 496 U.S. 941, 110 S.Ct. 3225, 110 L.Ed.2d 671 (1990). Furthermore, local school boards in Utah have significant control and autonomy. *See* Utah Code Ann. § 53A–2–108 ("Each school district shall be controlled by its board of education and shall be independent of municipal and county governments"; local board "shall have direction and control of all school property in the district").

*Mt. Healthy* teaches that a local school board's source of funds is one of several relevant factors. This was a very important factor in our *Harris* decision. Because we believed a "real possibility" existed that a money judgment against a school district "might be paid at least partially out of state funds," we felt compelled to conclude that the school district had immunity. *Harris*, 471 F.2d at 220. At the time of the *Harris* decision, political subdivisions in Utah including school districts were *permissively* "authorized to levy an annual property tax to pay claims or judgments." *Id.* at 222 (Holloway, J., dissenting) (citing Utah Code Ann. § 63–30–27 (Supp.1968)).

Subsequently, however—and this is the second post-*Harris* development that influences our determination—in 1988 the Utah legislature enacted a new statute that provides that "[a] local school board *shall* levy a special tax: (1) if a judgment is obtained against the board." Utah Code Ann. § 53A–16–111 (1992) (effective Feb. 2, 1988) (emphasis added).[2] Thus, the state of Utah now has provided that a money judgment in a federal court suit against a local school board will not be paid out of state funds. This mandatory requirement that

funds to pay a judgment against a school board come from a local tax undercuts the principal basis for the *Harris* decision—that such funds might come in part from state funds.

In our post-*Mt. Healthy* decisions considering whether school districts are arms or alter egos of the state entitled to immunity, we have asked two essential questions: "(1) To what extent does the board, although carrying out a state mission, function with substantial autonomy from the state government and, (2) to what extent is the agency financed independently of the state treasury." *Unified School District No. 480 v. Epperson*, 583 F.2d 1118, 1121–22 (10th Cir.1978). In *Epperson*, involving a Kansas school district, although the districts were subject to "general supervision" by the state, in contrast to Ohio school districts in *Mt. Healthy* that were subject to "some guidance," we found this difference was not of controlling significance. *Id.* at 1123. In *Epperson* the parties had agreed that any award would not be paid from state funds, "but from monies raised by special levy within the school district itself." *Id.* at 1122. Thus, we concluded that Kansas local school boards were not entitled to Eleventh Amendment immunity. In *Martinez v. Board of Education of Taos Municipal School District*, 748 F.2d 1393 (10th Cir.1984), we held that in New Mexico a local school district is an arm of the state entitled to Eleventh Amendment immunity. *Accord Garcia*, 777 F.2d at 1407; *Maestas v. Board of Educ. of Mora Indep. Sch. Dist.*, 749 F.2d 591, 592 (10th Cir.1984). The New Mexico constitutional provision there applicable provided that the state board of education determines public school policy and "shall have control, management and direction of all public schools." 748 F.2d at 1394 (quoting N.M. Const. art. XII, § 6).[3] The state board had

---

2. Although plaintiff's arrest, suspension and termination and the relevant actions of the defendant occurred in 1986 and 1987, and although plaintiff's complaint was filed on January 26, 1988 (seven days before the effective date of the statute), we believe that the statute is relevant here. It is clear beyond dispute that the statute became effective before plaintiff could have or did obtain any judgment against defendant.

3. As amended in 1986, the New Mexico Constitution now provides that the state board of education shall determine public school policy and "shall have control, management and direction, including financial direction, distribution of school funds and financial accounting for all public schools." N.M. Const. art. XII, § 6.

the power (which it has exercised on occasion) to operate districts not conforming to regulations and standards. *See id.* at 1395. The state controlled and certified each local district budget, ninety-six percent of which came from the state; we therefore found that money for a federal court judgment would be paid out of state funds. *Id.* at 1395–96.

Applying the factors set out in *Mt. Healthy,* especially the "state control" and "financial autonomy" standards we applied in *Epperson* and *Martinez,* we hold that the Granite School Board is not an arm or alter ego of the state, and is not entitled to state Eleventh Amendment immunity. In so holding we necessarily overrule *Harris.*[4]

### III

■ We next consider plaintiff's contention that the district court erred in granting defendant's summary judgment motion on the due process claims. Plaintiff's position as a tenured employee of the Board was a significant property interest under the applicable state and local law. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538–39, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985) (property interest in government employment is created and defined by state law); Utah Orderly School Termination Procedures Act, Utah Code Ann. §§ 53A–8–101 to –107; *see also* Professional Agreement, II R. doc. 34, ex. I at 42–46. Therefore, due process procedures were required to protect plaintiff's property interest. *See, e.g., Bailey v. Kirk,* 777 F.2d 567, 575 (10th Cir.1985). "Once it is determined that due process applies, the question remains what process is due." *FDIC v. Mallen,* 486 U.S. 230, 240, 108 S.Ct. 1780, 1787, 100 L.Ed.2d 265 (1988) (quoting *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972)).

### A

The Court has stated that due process "requires 'some kind of a hearing' prior to

the discharge of an employee who has a constitutionally protected property interest in his employment." *Loudermill,* 470 U.S. at 542, 105 S.Ct. at 1493. The pretermination hearing "should be an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Id.* at 545–46, 105 S.Ct. at 1495. In *Mallen,* however, the Court stated that "[a]n important government interest, accompanied by a substantial assurance that the deprivation is not baseless or unwarranted, may in limited cases demanding prompt action justify postponing the opportunity to be heard until after the initial deprivation." 486 U.S. at 240, 108 S.Ct. at 1787.

■ In the instant case, the Board presented uncontroverted evidence that, before suspending plaintiff, assistant superintendent Burton verified that plaintiff had been arrested on drug charges. An arrest and filing of charges by the government requires probable cause and thus provides a sufficient basis for temporary deprivation of a property interest without a prior hearing. *Cf. id.* at 241, 108 S.Ct. at 1787 (grand jury indictment provides sufficient basis, in combination with Congress' mandate that prompt suspension is needed to maintain integrity of banking system, for suspension without hearing). In the case before us the substantiated knowledge that a teacher had been arrested for drug sales raised a substantial government interest justifying immediate suspension without pay. Furthermore, the district notified plaintiff before the suspension and thus informally provided him with an opportunity to correct any erroneous information on which the suspension was based. In conversation with Burton, plaintiff professed his innocence but did not dispute the fact of the arrest. The district court properly granted summary judgment for defendant on plaintiff's claim of presuspension due process violation.

4. Because this panel opinion overrules a prior decision, it has been circulated among all the judges of this court in regular active service. All judges have expressed agreement with the conclusions reached herein overruling *Harris.*

## B

Plaintiff next asserts that he was not provided postsuspension, pretermination due process. *Loudermill* sets out the pretermination due process procedures to which a tenured public employee is entitled: "notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." 470 U.S. at 546, 105 S.Ct. at 1495. The uncontroverted facts indicate that plaintiff was provided with each of these components. As the district court noted, the suspension letter of April 8, 1986, and the termination letter of January 23, 1987, provided adequate notice to plaintiff of the charges against him. Plaintiff was made aware that the employer's reason for suspension and termination was conduct that violated state and/or federal law, specifically the arrest and the charges of drug violations. Finally, the April 8 letter informed plaintiff that he was "welcome at any time to an informal hearing." II R. doc. 34, ex. A. The fact that plaintiff never requested a postsuspension, pretermination hearing does not alter the fact that he was offered the opportunity for one. Plaintiff did discuss his case in conversations with the Board's representative, and although plaintiff and Burton dispute the exact nature of these contacts, it is clear that these contacts gave plaintiff an opportunity to respond at least minimally to the charges. The facts demonstrate that plaintiff was provided with due process as required by *Loudermill,* and summary judgment on this point was appropriate.

## IV

After he was terminated, plaintiff requested a hearing pursuant to the Utah Orderly School Termination Procedures Act, Utah Code Ann. § 53A–8–101 to –107 and Article 21.9 of the Professional Agreement. An independent hearing examiner held a post-termination hearing, at which the parties presented evidence and were allowed to cross-examine witnesses. The hearing examiner issued his decision and findings, and recommended that plaintiff be reinstated. Thereafter, the Board met in closed executive sessions to review the hearing examiner's findings and recommendation; "appealed" the hearing examiner's recommendation; held a hearing at which plaintiff was allowed to make a fifteen-minute presentation but not allowed to present additional evidence; and thereafter rejected the recommendation to reinstate plaintiff. The district court found that improprieties may have occurred during the Board's review of the hearing examiner's recommendation, and ordered that the Board conduct a new due process hearing before the Board.

Plaintiff asserts that the order to hold a new hearing was improper because the hearing examiner's recommendation was binding on the Board and, even if it was not, the court should have ordered the Board to review the recommendation rather than hold a new due process hearing. Plaintiff also contends that the trial court should not have ordered a new hearing before the Board because the Board was biased and could not be impartial. We address each of these arguments in turn.

## A

The district court's finding that the hearing examiner's decision was not binding on the Board was based on its interpretation of the Utah Orderly School Termination Procedures Act and the Professional Agreement. The relevant provisions of the Utah Act in effect at the time provided that:

At all hearings, after due notice and on demand of the educator, he may be represented by counsel, produce witnesses, hear the testimony against him and cross-examine witnesses and examine documentary evidence. Hearings may be held before the board or the board may establish a procedure whereby hearing is before examiners selected pursuant to section 53–51–7.

Utah Code § 53–51–6 (1987) (current version at Utah Code Ann. § 53A–8–105).

The board of education of each school district is hereby authorized and empowered to appoint hearing examiners to conduct hearings involving the termination

of educators. The board shall establish procedures whereby such hearing examiners are appointed. The board may delegate to such hearing examiners or may enter into contracts whereby said hearing examiners may make decisions relating to the employment of the educator which shall be binding upon both the educator and the board. Nothing herein shall be construed to limit the right of either the board or the educator to appeal to an appropriate court of law.

*Id.* § 53–51–7 (current version at Utah Code Ann. § 53A–8–106).

Apparently only one Utah court has addressed whether the statute requires that a hearing examiner's decision is binding on the board. *See Brown v. Board of Educ. of the Salt Lake City Sch. Dist.*, Civil No. C–83–8288, slip op. at 7–10 (Dist.Ct. Salt Lake County, Utah May 15, 1985). In *Brown,* the court stated that "when read in light of general principles of fairness and the policy of the Act, [the statute] requires that the Board and educator be bound by the hearing examiner's decision." *Id.* at 10. The *Brown* court reasoned that otherwise, when a hearing examiner concludes that an employee is entitled to relief, the Board "would merely reject the [o]pinion [of the hearing examiner] and require the educator to go through the entire process once again before the entire Board." *Id.* at 9.

As a lower state court decision *Brown* is "illuminating" of state law, *see, e.g., Sivell v. Conwed Corp.,* 666 F.Supp. 23, 28 (D.Conn.1987); however, as defendant points out *Brown* is distinguishable on its facts. The *Brown* case involved a Professional Agreement that was neutral on the issue of whether the hearing examiner's decision was binding on the Board. In contrast, the Professional Agreement in

the instant case provided that "[t]he recommendation of the hearing examiner will be advisory only." II R. doc. 34 at 45 (Agreement § 21.9.4). Thus, the examiner's decision is binding in the instant case only if the Act requires it.

The Act provides that a board *"may"* select a hearing examiner, and that the board *"may"* delegate to the examiner the ability to make binding decisions based on the hearing. "May" is a permissive term. *See, e.g., United States v. Lee,* 957 F.2d 770, 774 (10th Cir.1992); *Selman v. United States,* 941 F.2d 1060, 1064 (10th Cir.1991). The permissive language of the Act provides the Board discretion to select an examiner and further discretion to delegate or not to delegate decision-making authority to the examiner. Thus, the Act provides three basic options to the Board: it may (1) hold a hearing itself; (2) appoint a hearing examiner to hold the hearing subject to further review by the Board; or (3) delegate to the hearing examiner the authority to make a final decision.[5] In this case, as provided in the Professional Agreement, it is clear that the Board intended for the hearing examiner to act in an advisory capacity only. We therefore uphold the district court's decision that the hearing examiner's decision was not binding.

**B**

■ Plaintiff argues that neither Utah law nor the Professional Agreement provide for or permit more than one hearing, and therefore, the court should have ordered the Board to conduct a review of the hearing examiner's decision rather than a new evidentiary review.[6] Plaintiff also points out that the Professional Agreement does not refer to any hearing before the Board but simply provides that the Board's function is to make a final disposition with-

**5.** Plaintiff's reading of the Act that once an examiner is appointed the examiner alone possesses the authority to make binding decisions is in opposition to the plain language of the Act. One section of the Act allows for appointment of an examiner, and the next section provides that the Board *may* delegate or by contract give authority to the examiner to make a decision that "shall be" binding. Only if the Board has appointed a hearing examiner *and* decided to

delegate its decision-making authority is the examiner's decision binding.

**6.** Defendant asserts that plaintiff failed to raise this issue in the district court. We disagree. *See* II R. doc. 54 at 55–57 (plaintiff's memorandum in support of cross-motion for summary judgment).

in thirty days after the hearing examiner's recommendation. Because the Agreement also provides that the examiner's decision is advisory, it does not rule out the possibility of a hearing before the Board. We hold that the trial court did not abuse its discretion in ordering a new hearing before the Board.[7]

### C

■ Plaintiff also asserts that the order of a new hearing before the Board was improper because the Board was biased against him. "[A]n impartial tribunal is an essential element of a due process hearing." *Bailey*, 777 F.2d at 576. To establish a due process violation, plaintiff was required to make a "substantial showing" of bias. *Id.* at 577; *see also Withrow v. Larkin*, 421 U.S. 35, 47–50, 95 S.Ct. 1456, 1464–65, 43 L.Ed.2d 712 (1975) (plaintiff "must overcome a presumption of honesty and integrity in those serving as adjudicators").

Plaintiff cites the following evidence as providing a sufficient showing of bias: the Board rejected the hearing examiner's recommendation to reinstate without written findings, met improperly in closed sessions with legal counsel and Burton, and used expunged records improperly. These procedural irregularities are not strong evidence of bias.

The more disturbing evidence of bias is deposition testimony of Board chairman Davidson that unless "forced by judicial decree to re-employ [plaintiff]" he would not do so, III R. tab G at 30–31, and the testimony of Board member Christensen that "I don't care if the records were expunged or sealed or not." III R. tab F at 19. Although Christensen was no longer on the Board at the second hearing, Davidson remained on the Board throughout the proceedings in question. We have reviewed Davidson's statement and are satisfied that taken in context, the statement reflected his belief that the Board should not re-hire a teacher shown to have been involved with criminal drug activity. At the time he made the statement Davidson reasonably believed that the Board properly could consider plaintiff's prior record in determining whether to accept or reject the hearing examiner's recommendation. Therefore, his comment does not show bias but rather was based on the evidence before him at the time. When he subsequently was informed he could not use the prior record, he could still be unbiased. We hold that the trial court, which had before it the entire record, did not clearly err when it rejected plaintiff's claims of bias.

### V

When the district court ordered defendant Board to conduct a new due process hearing after plaintiff filed suit, the court instructed that "while the Board may consider any direct evidence of plaintiff's conduct ..., examination of expunged records ... should not be considered or reviewed by the Board." I R. doc. 69 at 12 n. 6. Before the Board conducted the new hearing, the Utah Supreme Court decided that under an earlier version of the statute[8] an

---

**7.** *deKoevend v. Board of Education of West End School District RE–2,* 688 P.2d 219 (Colo.1984), relied upon by plaintiff, is distinguishable because Colorado law establishes a specific two-step procedure whereby in the second step "[t]he board of education shall *review* the hearing officer's findings of fact and recommendations." *Id.* at 225 (emphasis added); *see also id.* at 225–26.

**8.** The version of the statute addressed in *Doe* provided in part that:

> Employers may inquire concerning arrests or convictions only to the extent that the arrests have not been expunged or the record of convictions sealed under this provision. In the event an employer asks concerning arrests

which have been expunged or convictions the records of which have been sealed, the person who has received expungement of arrest or judicial pardon may answer as though the arrest or conviction had not occurred.

Utah Code Ann. § 77–18–2(3) (Supp.1985) (emphasis added), *quoted in Doe,* 782 P.2d at 491; *see also Doe,* 782 P.2d at 490 & n. 1 (noting that the subsequent 1987 amendment was not applicable).

As amended in 1987, and in effect at all relevant times herein, the statute provided in part that "[t]he person who has received expungement and sealing of an arrest or conviction may answer an inquiring employer as though the arrest or conviction did not occur." Utah Code Ann. § 77–18–2(3) (1990) (effective Apr. 27,

expungement order prevented a state licensing agency from "consider[ing] or even inquir[ing] about a petitioner's expunged offenses or record." *Doe v. Department of Public Safety*, 782 P.2d 489, 494 (Utah 1989). Plaintiff then requested that the district court issue a protective order prohibiting the Board from eliciting testimony concerning the expunged arrest. The court denied the motion.

At the new hearing the Board held on November 14, 1989, it considered testimony by the arresting officer and the paid informant concerning the events related to plaintiff's arrest. One week later, after the Board met in executive session with the superintendent and the assistant superintendent, it voted to affirm plaintiff's termination and issued formal findings.

Subsequently, the Board filed a motion to dismiss plaintiff's complaint. Plaintiff objected, asserting that his due process rights were violated by the presence of Burton at the executive session, and also asserting that the Board's findings bore no rational nexus between the alleged reason for termination and plaintiff's effectiveness as teacher. The district court ultimately dismissed all causes of action except the allegation that the Board's review process in July 1987 denied plaintiff due process.

Thereafter, in *Ambus v. Utah State Board of Education*, 800 P.2d 811 (Utah 1990), the Utah Supreme Court held that in the Utah State Board of Education's hearing on the revocation of plaintiff's teaching certificate, "the testimony [of the arresting officer and the paid informant] was prohibited by" Utah's expungement statute.[9] *Id.* at 813. Plaintiff then filed a motion requesting the district court reconsider its prior rulings on expungement. The district court denied the motion.

### A

Plaintiff asserts that the Utah expungement statute, as interpreted by the Utah Supreme Court in *Doe* and *Ambus*, prohibited the Board from using the expunged arrest records, the testimony of the arresting officer and the paid informant, or any information concerning the arrest in reviewing the hearing examiner's decision or in conducting the new hearing.

 The version of the Utah expungement statute that is relevant here, Utah Code Ann. § 77–18–2 (1990) (effective Apr. 27, 1987) (current version at Utah Code Ann. § 77–18–2 (Supp.1991)), is the same version considered in *Ambus* but different from that considered in *Doe*. The statute provides that once an expungement order is issued, "[a]ny agency or its employee who receives an expungement order may not divulge any information in the sealed expunged records." *Id.*, § 77–18–2(5).(a). The important question before us is whether the statute, as interpreted by these decisions, prohibited testimony by the police relating to the expunged arrest, and prevented defendant Board from relying on the arrest and charges in upholding the decision to terminate plaintiff's employment.

In *Ambus*, the Utah Supreme Court described the issue as "whether the [state] Board could properly admit and use evidence of events contained in the record that gave rise to criminal charges that had been dismissed and resulted in expungement." 800 P.2d at 812. The court noted that at the time of the State Board's revocation hearing, October 20, 1988, "it is undisputed that the arresting officer had notice of the expungement sealing of the record." *Id.* at 813. Because the arresting officer knew that the information he testified to "was contained in the sealed expunged record

---

1987) (current version at Utah Code Ann. § 77–18–2(3) (Supp.1991)). Importantly, this version does *not* include the 1985 version's language highlighted above that limits employer *inquiries* into expunged arrests or convictions.

**9.** The pertinent section of the expungement statute provides in part: "The Utah Bureau of Criminal Identification shall keep, index, and main-

tain all expunged and sealed records of arrests and convictions. *Any agency or its employee who receives an expungement order may not divulge any information in the sealed expunged records.*" Utah Code Ann. § 77–18–2(5)(a) (1987) (emphasis added) (current version at Utah Code Ann. § 77–18–2(5)(a) (Supp.1991)), *quoted in Ambus*, 800 P.2d at 813.

and derived solely from the arresting officer, the toxicology report, and the agency's paid informant, the testimony was prohibited." *Id.* The *Ambus* opinion emphasized that "[t]hose persons who have access to the sealed record or whose testimony is bolstered by reference to it cannot be allowed to 'recreate' the record in proceedings subsequent to the expungement." *Id.*

In the instant case, the district terminated plaintiff's employment because it determined that he had "violated the criminal laws of the State of Utah." II R. doc. 87, ex. B at 3. The Board argues that it was entitled to rely on evidence of plaintiff's arrest that it had obtained before the expungement order. The Board also argues that *Doe* and *Ambus* are not controlling because those cases involved state licensing agencies that did not become aware of an arrest until *after* the arrest had been expunged.

In denying plaintiff's motion for reconsideration, the district court agreed that *Ambus* is distinguishable. The district court thought it significant that in *Ambus* the State Board of Education had original jurisdiction over revocation of teaching certificates, while in the instant case the defendant Board was acting in an appellate capacity in reviewing the district's decision to terminate the plaintiff's employment. The district court stated that

> [s]ince defendant Granite Board of Education was reviewing the District's termination decision in this regard, plaintiff's alleged criminal *conduct* was an issue that was properly before the Board. Plaintiff's arrest or conviction [sic] were not necessary for the Board's determination and were not before the Board pursuant to this court's Order regarding

Plaintiff's Motion for Protective Order. The expungement statute cannot be used as a sword, instead of a shield, such that the District is prevented from presenting evidence to the Board which was the basis for the very decision that was being reviewed by the Board. It is significant that the District's decision to terminate plaintiff's employment was prior to the time when plaintiff's criminal records and conduct were ordered expunged. However, it was a mere fortuity and of no legal significance in this case that plaintiff's criminal records were expunged prior to the Board's post-termination hearings.

I R. doc. 117 at 9 (citation omitted).

The district court appears to have concluded that testimony by the police officer and undercover agent was proper because they did not testify as to the actual fact of the arrest and because before the expungement order the district possessed the evidence to which they testified. As we read the statute and cases, however, once the police department received the expungement order, employees of the department could not then testify concerning information contained in the expunged record.

■ The district terminated plaintiff's employment based on knowledge of the arrest and charges obtained before the expungement order was issued. We agree that the school district properly could rely on any information concerning plaintiff's conduct that it received *before the expungement order became effective,* and after the expungement order it was entitled to present at a due process hearing the information on which it relied in making the initial decision.[10]

---

10. The record on appeal indicates only that in making the original decision to terminate plaintiff's employment, the district had knowledge that plaintiff had been arrested, had been charged with drug offenses, and was "working off" the charges. We find no indication of what other knowledge concerning plaintiff's conduct the district used in making its decision to suspend and then terminate plaintiff, which occurred before the issuance of the expungement order. The affidavit of (then) Assistant Superintendent Burton outlines the basis for the initial decision to terminate plaintiff's employment:

Burton confirmed the arrest and charges, and then

> [w]e determined through our school District security personnel that [plaintiff] entered into an agreement with the police and prosecutor that he would act as a police informant and police undercover agent in assisting the police to arrest other drug sellers. According to the information we received [plaintiff] completed his contract assisting in at least three arrests and having worked off his contract, the criminal charges against him were dismissed.

The district was entitled to present to the Board for review this information and all other evidence of plaintiff's conduct that it relied upon in making its decision. This is consistent with the Utah Supreme Court's statement that

> [a]lthough court records are sealed, employers or licensing agencies may make independent inquiry into the acts of those who are or will be employed. So long as independent inquiry is not from state agency sources that have received an expungement order, it is the employer's or agency's prerogative to decide whether any information properly received qualifies an individual for employment or licensure.

*Ambus,* 800 P.2d at 813–14. The district, however, was not entitled to present testimony by the arresting officer or paid informant that was prohibited under Utah law. Before the new hearing before the Board on November 14, 1989, the police department had received the expungement order. Therefore, the Utah expungement statute as interpreted by the Utah Supreme Court in *Ambus* clearly prohibited an employee of that department from testifying concerning the arrest or events surrounding the arrest.[11] Thus, the district court's denial of plaintiff's motion for a protective order and for reconsideration of the denial of the protective order was an abuse of discretion. *See, e.g., Robinson v. America's Best Contacts and Eyeglasses,* 876 F.2d 596, 597 (7th Cir.1989) (reviewing order denying motion for reconsideration for abuse of discretion).

 Because it found no violation of the Utah expungement statute, the district court did not decide "whether violation of

Utah's expungement statute rises to the level of violation of due process rights under the United States Constitution justifying an action under 42 U.S.C. Section 1983." I R. doc. 117 at 8. The Supreme Court has noted that whether a public employee has a property interest in continued employment is a matter of state law, *see Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2708, 33 L.Ed.2d 548 (1972), but federal constitutional law determines what process is due, *Loudermill,* 470 U.S. at 541, 105 S.Ct. at 1492. Although not every violation of a state statute is a federal due process violation, *see Stern v. Tarrant County Hosp. Dist.,* 778 F.2d 1052, 1059 (5th Cir.1985), *cert. denied,* 476 U.S. 1108, 106 S.Ct. 1957, 90 L.Ed.2d 365 (1986), the federal Constitution requires that a plaintiff deprived of a protected property interest be afforded "the opportunity to present his case and have its merits fairly judged," *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 433, 102 S.Ct. 1148, 1156, 71 L.Ed.2d 265 (1982). Presentation of testimony that violated the Utah expungement statute implicated plaintiff's procedural due process right to a fair, impartial hearing. We therefore remand for a new due process hearing.

On remand plaintiff is entitled to a new hearing before an impartial tribunal. Because of the history of defects in prior hearings in this case, we question whether the Granite School Board can provide unbiased decision-making. The district court is instructed to determine whether the Board can provide an impartial hearing, and if not, the court is to order the Board to appoint an impartial hearing examiner or panel in accordance with Utah Code Ann.

---

.... Acting on the information we had from outside sources and our own knowledge of the charges, the police record of the witness of those charges, and the result of these charges being worked off by defendant, it was determined that his conduct in selling drugs violated the standards of the School District and that [plaintiff] should be dismissed.
Brief of Appellee, doc. 53, ex. B at 3.
Apparently the Board understood the work-off agreement to be an admission of guilt. Although there is a question whether an arrest, charges, and an agreement to work off such

charges constitute sufficient basis for terminating a tenured employee, we do not review the appropriateness of the Board's decision. *See Pitts v. Board of Educ. of U.S.D. 305, Salina, Kan.,* 869 F.2d 555, 557 (10th Cir.1989) ("Federal courts do not sit to second guess state decisions on the merits of a discharge decision, but only to ensure that employees are provided due process when the decision is made.").

11. In fact, the Utah expungement statute provides a criminal penalty for violation of the statute. *See* Utah Code Ann. § 77–18–2(6).

§ 53A–8–106 to make a binding determination. At the new hearing the district is entitled to present the information it had before it when it made the initial decision to terminate plaintiff's employment. The district may present other evidence of plaintiff's conduct relevant to the termination that it received after the expungement order only if such evidence does not violate the expungement order. The district is not entitled to present any testimony of the arresting officer, paid informant, or others subject to the expungement order.

**B**

 Plaintiff also asserts that the district court erred in finding the Board did not violate due process by including the superintendent and assistant superintendent in a closed executive session during which the Board deliberated on whether to uphold plaintiff's termination. According to affidavits filed by plaintiff, the two administrators were present during all but five to ten minutes of the executive session; the Board introduced an affidavit of the superintendent that both administrators left the session before the Board deliberated and made its decision.[12] The district court indicated that if the administrator was present during the deliberations "it likely would be of the same type of irregularity that gave rise to the previous court[-]ordered new hearing," I R. doc. 94 at 6–7, but found the evidence supported the conclusion that the Board considered the termination in the short time after the two administrators left the meeting. Therefore, applying the presumption of regularity the court found no due process violation.

On appeal plaintiff has produced minutes of the Board's executive session of November 21, 1989, that suggest the administrators were present during the termination deliberations. Plaintiff had requested certain documents in July 1988, and alleges that defendants had an ongoing duty to produce the minutes. Defendant supplied the minutes on December 6, 1990, but plaintiff asserts he had no opportunity to call this to the attention of the district court before the final decision of December 31, 1990. Although we question why this document was not produced, we will not reverse the grant of summary judgment on this issue based on evidence not before the district court. *See Impossible Elecs. Techniques, Inc. v. Wackenhut Protective Sys., Inc.*, 669 F.2d 1026, 1033 n. 7 (5th Cir. Unit B 1982).

AFFIRMED in part, REVERSED in part, and REMANDED for proceedings consistent with this opinion.

---

**12.** Superintendent Burton's affidavit, however, at least in the appellate record, is unsigned. *See* II R. doc. 88, ex. A. Because the district court relied on Burton's affidavit, we assume that a signed and properly notarized version exists and was before the district court.