**F I L E D**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

DANIEL MATURI NGUGI,

      Petitioner,

  v.

ALBERTO R. GONZALES, Attorney
General, [*]

      Respondent.

No.  04-9574
(BIA No. A96-083-894)
(Petition for Review)

---

**ORDER AND JUDGMENT** [**]

---

Before **EBEL** , **HARTZ** , and **McCONNELL** , Circuit Judges.

---

      After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is

therefore ordered submitted without oral argument.

---

[*]     On February 4, 2005, Alberto R. Gonzales became the United States
Attorney General.  In accordance with Rule 43(c)(2) of the Federal Rules of
Appellate Procedure, Mr. Gonzales is substituted for John Ashcroft as the
Respondent in this action.

[**]     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Daniel Maturi Ngugi petitions for review of an order of the Board of Immigration Appeals (BIA) summarily affirming the denial by the immigration judge (IJ) of his request for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). Mr. Ngugi presents the following issues for review: (1) whether the BIA violated its regulations by not assigning the case to a three-member panel for review; (2) whether the government violated his confidentiality rights as an asylum-seeker; and (3) whether the BIA erred in determining that he is not eligible for relief through asylum, withholding of removal, or the CAT. We affirm the BIA's decision.

I

On March 25, 2002, Mr. Ngugi, a Kenyan citizen, entered the United States as a nonimmigrant visitor, with authorization to remain until September 24, 2002. The alleged purpose of his visit was to attend a church conference in June 2002, but he did not attend the conference. On September 3, 2002, he applied for asylum. Six weeks later he was charged with being subject to removal for staying in this country longer than permitted. He was further charged on December 31, 2002, with being subject to removal for having submitted a forged employment letter in support of his visa application. On March 19 and 20, 2003, a hearing was held on his asylum application and the visa-fraud charge. The IJ sustained the visa-fraud charge and found Mr. Ngugi ineligible for asylum, withholding of

-2-

removal, and protection under the CAT. Mr. Ngugi appealed to the BIA and sought review by a three-member panel. A single member of the BIA issued an affirmance without opinion under 8 C.F.R. § 1003.1(e)(4).

## II

Mr. Ngugi bases his asylum claim on his relationship with James Orengo. His account was as follows: Mr. Orengo was a member of the Kenyan parliament and the leader of Muungano Wa Mageuzi (MWM), an organization fighting for a new constitutional order and abolition of oppressive laws in Kenya. Mr. Ngugi knew Mr. Orengo because he was a customer of the Standard Chartered Bank where Mr. Ngugi worked. Mr. Ngugi was arrested after being seen talking to Mr. Orengo. The police accused him of attending an unauthorized MWM rally, even though Mr. Ngugi had not actually attended the rally. He was released after an overnight detention. About three months later Mr. Orengo invited him to a political fundraiser on behalf of MWM. Although he did not attend the fundraiser, Mr. Ngugi did make a financial contribution to MWM. After he contributed to MWM, he was interrogated and warned to stay away from Mr. Orengo.

In February 2002, Mr. Ngugi encountered Mr. Orengo when they were both at court on different matters. As a result of this chance meeting, Mr. Ngugi was arrested and tortured. Officers stripped him, beat him, stuck needles under his

fingernails, and burned the soles of his feet with hot metal rods. After the torture he was told to sign five blank papers and then released. He went to a medical center where he received treatment. About a month later he learned from a friend who worked for the police that the five blank pages he had signed were being filled out to indicate that he was involved with MWM in planning a massacre. He "thought it would be safer for me to leave the country for a while, until maybe . . . things cooled down." Admin R. at 314.

Mr. Ngugi also testified about the change in Kenya's government in December 2002. The Kenya African National Union (KANU) was the political party in power when he left, but it lost the election and the National Alliance Rainbow Coalition (NARC) took control. Mr. Ngugi said that he thought the new government would still cause him harm if he returned because many of the same people were still in positions of power.

III

When the BIA summarily affirms an IJ's decision, this court reviews the IJ's analysis as if it were the BIA's. *Tsevegmid v. Ashcroft*, 336 F.3d 1231, 1235 (10th Cir. 2003). "[These] findings of fact are conclusive unless the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* (internal quotation marks omitted).

-4-

First, Mr. Ngugi argues that the BIA violated its own regulations by not assigning the case to a three-member panel for review. We have jurisdiction to review the BIA's decision to decide a case using a single BIA member rather than assigning it to a three-member panel. *Batalova v. Ashcroft*, 355 F.3d 1246, 1252 (10th Cir. 2004). As the discussion of the merits of his petition will show, however, Mr. Ngugi has not demonstrated that his case meets the criteria for decision by a three-member panel under 8 C.F.R. § 1003.1(e)(6).[1] The BIA

---

[1]    Section 1003.1(e)(6) states:
Panel decisions. Cases may only be assigned for review by a three-member panel if the case presents one of these circumstances:

(i) The need to settle inconsistencies among the rulings of different immigration judges;

(ii) The need to establish a precedent construing the meaning of laws, regulations, or procedures;

(iii) The need to review a decision by an immigration judge or the Service that is not in conformity with the law or with applicable precedents;

(iv) The need to resolve a case or controversy of major national import;

(v) The need to review a clearly erroneous factual determination by an immigration judge; or

(vi) The need to reverse the decision of an immigration judge or the Service, other than a reversal under § 1003.1(e)(5).

therefore did not err by having a single member decide this case.    *See Batalova*,

355 F.3d at 1252.

Second, Mr. Ngugi asserts that the government violated the confidentiality

provisions of 8 C.F.R. § 208.6 by disclosing that he was seeking asylum in the

United States.  Section 208.6(a) prohibits the nonconsensual disclosure to third

parties of information regarding a person's asylum application.[2]  This prohibition

does not apply, however, to any disclosure to a United States government official

having a need to examine information in connection with the adjudication of an

asylum application.  8 C.F.R. § 208.6(c)(1).[3]  There is no evidence in the record

_____

[2]    Section 208.6(a) states in pertinent part:
Information contained in or pertaining to any asylum application
. . . shall not be disclosed without the written consent of the
applicant, except as permitted by this section or at the discretion of
the Attorney General.

[3]    Section 208.6(c)(1) states in pertinent part:
This section shall not apply to any disclosure to:

(1) Any United States Government official or contractor having a
need to examine information in connection with:

(i) The adjudication of asylum applications;

. . .

(iii) The defense of any legal action arising from the adjudication of,
or failure to adjudicate, the asylum application . . . ;

(iv) The defense of any legal action of which the asylum application

(continued...)

-6-

of any disclosure to an improper third party regarding Mr. Ngugi's asylum application.

Mr. Ngugi's claim is based on a letter to the United States embassy from the Standard Chartered Bank in March 2002, after Mr. Ngugi's visa approval. The letter indicates that the employment letter Mr. Ngugi had submitted with his visa application had been forged. The bank's letter predates by six months Mr. Ngugi's asylum application, which was filed in September 2002. Later, as part of its investigation into Mr. Ngugi's asylum application, counsel for the government contacted the United States embassy in Kenya. The United States Consul in Kenya then explained in a memorandum the circumstances surrounding Mr. Ngugi's visa application and the information received from the Standard Chartered Bank in the March 2002 letter. There is no indication in the memorandum, or anywhere else in the record, that anyone contacted Standard Chartered Bank *after* Mr. Ngugi applied for asylum. Because there is no evidence that Mr. Ngugi's identity as an asylum-seeker was disclosed in violation of § 208.6, this argument fails.

---

[3](...continued)
    . . . is a part; or

    (v) Any United States Government investigation concerning any criminal or civil matter; . . .

Mr. Ngugi also argues that the IJ's reliance on this memorandum in making an adverse credibility determination violated his right to due process and a fair hearing. Mr. Ngugi challenged the admissibility of the memorandum at his hearing before the IJ, arguing that it should not be admitted because he was not able to cross-examine the consular officer who prepared it. The IJ's credibility determination is irrelevant, however, because, as explained below, we affirm the IJ's decision on the basis of changed country conditions. Thus, any error in relying on the memorandum is harmless.

Finally, Mr. Ngugi argues that he is eligible for asylum, withholding of removal, and CAT relief. The IJ denied the request for asylum because he determined that Mr. Ngugi was not credible in establishing "that he had suffered past persecution because of his perceived political connection to James Orengo." Admin R. at 214. The IJ also found that "even assuming [Mr. Ngugi] had established past persecution, . . . the changed country conditions that have taken place in Kenya since the time of respondent's departure do not make a fear of future persecution well-founded." *Id.* Because Mr. Ngugi had failed to establish his entitlement to asylum, the IJ concluded that Mr. Ngugi was also not eligible for withholding of removal, which requires a stronger showing. In addition, the IJ found that Mr. Ngugi's testimony was not sufficiently convincing and

persuasive to carry his burden of establishing eligibility for protection under the CAT.

In Mr. Ngugi's opening brief he fails to offer any argument to support his statement that the IJ made errors of fact and law with respect to his eligibility for withholding of removal. An issue so mentioned, but not addressed, is deemed waived. *See Ambus v. Granite Bd. of Educ.*, 975 F.2d 1555, 1558 n.1 (10th Cir. 1992). Similarly, in his discussion of his CAT claim, Mr. Ngugi simply makes the conclusory statement that "[he] is eligible for CAT relief," and sets out the standards for establishing CAT relief. Pet. Br. at 25-26. He again fails to provide any reasoned argument with citations to the record to support this contention. "Arguments inadequately briefed in the opening brief are waived . . . ." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998) (internal citations omitted); *see also* Fed. R. App. P. 28(a)(9)(A)("[Appellant's] argument . . . must contain . . . appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which appellant relies."). Accordingly, we do not address Mr. Ngugi's withholding-of-removal and CAT claims.

As for Mr. Ngugi's asylum claim, he argues that he "showed past persecution and the court did not give [him] notice and opportunity to rebut that it was of the opinion country conditions had changed to the point where there was

no future threat." Pet. Br. at 25. Proof of past persecution creates a presumption that there is a well-founded fear of future persecution, and the burden shifts to the government to rebut the presumption. *Krastev v. INS*, 292 F.3d 1268, 1270-71 (10th Cir. 2002). The government may rebut this presumption by demonstrating that "there has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution in the applicant's country of nationality." *Id.* at 1271 (internal quotation marks omitted). Although Mr. Ngugi claims otherwise in his appellate brief, he had ample opportunity to testify and present evidence about the change in circumstances in Kenya.

On direct examination, counsel for Mr. Ngugi solicited testimony from Mr. Ngugi about this issue. Specifically, he asked Mr. Ngugi to "explain to the Court why you think that the change in government would–with this new government would still cause you harm if you returned?" Admin. R. at 321. Mr. Ngugi answered that he thought he would be harmed because many of the same people were still in positions of power even though there was a new government. This issue also arose on cross-examination when Mr. Ngugi was asked, "So you don't think things have cooled down with the complete change of structure in your government, complete change of both president and parliament?" *Id.* at 347. He testified again about his belief that the same people were basically still in power. The judge also questioned Mr. Ngugi about the significance of the

change in the government. In addition, to support his argument further, Mr. Ngugi offered into evidence newspaper articles and a list of names of officials who had been in the previous government and were also in the current government. And during closing argument Mr. Ngugi's counsel stated, "Furthermore, we believe that the evidence shows that there has not been substantial change in conditions back home, and that if he were to return, he would still be facing persecution once again." *Id.* at 394. It is disingenuous for counsel now to argue that Mr. Ngugi was not given an opportunity to address this issue at his hearing before the IJ.

Mr. Ngugi's brief does not challenge the merits of the IJ's decision regarding changed country conditions. The record shows that the government submitted documents establishing that in December 2002, NARC, a new political party, was elected to replace the KANU party for the first time since Kenya's independence in 1963. Newspaper articles quote the new NARC government as pledging to end government corruption. It was President Moi and the KANU regime, ousted in the December 2002 election, that had harassed James Orengo and MWM.

The judgment of the BIA is AFFIRMED.

Entered for the Court

Harris L Hartz
Circuit Judge